Jacqueline E. THORBJOHNSON, Administratrix of the Estate of Russell E. Kaler

v.

ROCKLAND–ROCKPORT LIME CO., Inc. and City of Rockland.

Supreme Judicial Court of Maine.

April 2, 1971.

David A. Nichols, Camden, for plaintiff.

Grossman, Faber & Miller by A. Alan Grossman, Barry M. Faber, Samuel W. Collins, Jr., Wayne R. Crandall, Rockland, Mahoney, Robinson, Desmond & Mahoney, Portland, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WERNICK, Justice.

The appeal by plaintiff administratrix in this case is now properly before this Court since the parties have filed a Supplemental Record in compliance with the Order of the Court in Thorbjohnson, Adm'x. v. Rockland-Rockport Lime Co., Me., 272 A.2d 779 (1971).

The Supplemental Record reveals that the court below sustained a motion to dismiss the complaint as the City of Rockland filed by defendant City. A final judgment of dismissal was entered after the presiding Justice, pursuant to Rule 54(b) M.R.C.P., had expressly determined that there was no just reason for delay and had expressly directed judgment to be entered forthwith for the defendant City.

The appeal of plaintiff claims error in the dismissal ordered on the ground that the complaint had failed to set forth a claim upon which relief can be granted. The reasoning of the presiding Justice was (1) since the action against the city was unavailable to plaintiff at common law, the applicable provisions of 23 M.R. S.A. § 3655 which create the cause of action must be fulfilled; (2) the face of the complaint reveals that specific provisions deemed applicable by the presiding Justice as preconditions of the cause of action were violated in that (a) "the action was not commenced within one year from the alleged occurrence" and (b) the complaint omitted to allege "the required notice."

23 M.R.S.A. § 3655 [1]—the meaning of which in relation to "a civil action" by "executors or administrators * * *", if the life of any person is lost, is the fun-

---

[1]. The statute reads: "Whoever receives any bodily injury or suffers damage in his property through any defect or want of repair or sufficient railing in any highway, town way, causeway or bridge may recover for the same in a civil action, to be commenced within one year from the date of receiving such injury or suffering damage, of the county or town obliged by law to repair the same, if the commissioners of such county or the municipal officers or road commissioners of such town or any person authorized by any commissioner of such county or any municipal officer or road commissioner of such town to act as a substitute for either of them had 24 hours' actual notice of the defect or want of repair, but not exceeding $4,-000 in case of a town. If the sufferer had notice of the condition of such way previous to the time of the injury, he cannot recover of a town unless he has previously notified one of the municipal officers of the defective condition of such way. Any person who sustains injury or damage or some person in his behalf, shall, within 14 days thereafter, notify one of the county commissioners of such county or of the municipal officers of such town by letter or otherwise, in writing, setting forth his claim for damages and specifying the nature of his injuries and the nature and location of the defect which caused such injury. If the life of any person is lost through such deficiency, his executors or administrators may recover of such county or town liable to keep the same in repair, in a civil action, brought for the benefit of the estate of the deceased, such sum as the jury may deem reasonable as damages, if the parties liable had said notice of the deficiency which caused the loss of life. At the trial of any such action the court may, on motion of either party, order a view of the premises where the defect or want of repair is alleged when it would materially aid in a clear understanding of the case."

damental problem of the present case—is, on its face, grossly ambiguous. Initially, it may be observed that it consists of a *single* paragraph which deals with (1) "a civil action" by "whoever receives any bodily injury or suffers damage in his property" and (2) a "civil action" by "executors or administrators" which is "brought for the benefit of the estate" in the event "life of any person is lost", and the recovery to be "such sum as the jury may deem reasonable as damages".

In addition to this preliminary difficulty that *one* paragraph purports to deal with *two* types of civil actions in which procedures, potentially at least, might be different and different principles as to the amounts of damages recoverable might be involved, other problems of interpretation are seen to be precipitated by the legislature's use of limitations and conditions which seem reasonably to be confined, or more readily applicable, to one of the types of actions rather than the other.

Specifications may be mentioned as illustrative of this point. First, in the action for personal injury or property damage, the damages recoverable are limited to a maximum of $4,000.00, in particular circumstances, in the case of a *town* (including city) whereas (1) such limitation is absent as to a *county* and (2) in the action for loss of life the statute says "such sum as the jury may deem reasonable as damages."

Second, in the action for personal injury or property damage the statute specifies that the recovery shall be from the county or town and in immediate and direct conjunction with this provision the statute adds:

"if the commissioners of such county or the municipal officers or road commissioners of such town or any person authorized by any commissioner of such county or any municipal officer or road commissioner of such town to act as a substitute for either of them had 24 hours' actual notice of the defect or want of repair, * * *."

In dealing with the action for loss of life, however, while the statute repeats that the recovery shall be against the county or town, the statute *omits* any *immediate conjunction* of a requirement of "24 hours' actual notice". It says only "if the parties liable had *said* notice of the deficiency which caused the loss of life." (emphasis supplied) This word, "said", creates further ambiguity in that it is unclear whether it refers to the above-mentioned 24 hours' actual notice *prior* to the occurrence of any event causing the harm to remedy which the civil action lies, and regardless of the *source* or *manner* of the notice, or whether it purports to designate, conjunctively or alternatively, a separate and independent notice provision which appears in the statute in the sentence *immediately preceding* that which creates the civil action for loss of life but which, nevertheless, is explicitly concerned with "any person who sustains injury or [property] damage." This latter notice must be *written* and must be given *after* the occurrence by

"Any person who sustains injury or damage or some person in his behalf [and who the statute says as to the *manner* of the notice] shall, within 14 days thereafter, notify one of the county commissioners of such county or of the municipal officers of such town by letter or otherwise, in writing, setting forth his claim for damages and specifying the nature of his injuries and the nature and location of the defect which caused such injury."

Third, and again in manifest reference to the action for personal injury or property damage, the statute apparently subjects a *county* to potential liability but exempts from liability a *town* (including city) "if the sufferer had notice of the condition * * * previous to the time of the injury" and had failed to notify "one of the municipal officers of the defective

condition * * *." No similar explicit differentiation between a county and town, as to liability, is *expressly* conjoined with the civil action to recover if "the life of any person is lost."

Fourth, in immediate and direct conjunction with the statutory language authorizing, as to bodily injury or property damage, a civil action for recovery, there appears the statement "to be commenced within one year from the date of receiving such injury or suffering damage." In a much later portion of the paragraph, and widely separated from the above language by an abundance of other language and concepts, there appears the authorization of a civil action "if the life of any person is lost." The creation of the civil action for loss of life is directly accompanied by a requirement that "the parties liable" must have "said notice of the deficiency which caused the loss of life". Omitted, however, is any provision, or suggestion, of a time period within which the action for loss of life must be commenced.

Further complications are created in the statute insofar as the aforementioned apparent *differences* of approach to the two types of civil actions comprehended in the one paragraph are accompanied by other words reasonably construable as indicative of a potentially *integrated* treatment. Illustrative of this difficulty is the legislature's utilization throughout the paragraph of abbreviated interrelating and re-referral words of the type of "such", "said", and "same". Thus, at the end of the paragraph the statute speaks of a view being permissible at the trial of "any such action", thereby leaving unclear whether the reference is to the action designated in the immediately preceding sentence (the action for loss of life) or whether it is applicable to *both* the death action and the action for personal injury or property damage discussed at the commencement of the paragraph. Likewise, in dealing *specifically* with the action for loss of life the legislature repeatedly uses the words "such", "said", and "same". The legislature speaks

of life being lost through "such deficiency" and the question arises whether the word "such" purports to refer back to part, or all, of the delineations promulgated at the outset of the paragraph—i. e.—"any defect or want of repair or sufficient railing in any highway, town way, causeway or bridge"; and if so, whether, generally, the words "such", "said" and "same" constitute a type of shorthand employed to avoid repetition of the prior concepts but yet designed to reincorporate relative to the death action *all*, or some, (and if only some which), of the conditions previously prescribed in relation to the personal injury or property damage action. Similar problems are generated by the legislature's use relative *specifically* to the death action of the words "*such* county or town", "keep the *same* in repair" and "*said* notice." (all emphases supplied)

In the light of the aforementioned confusion it is euphemistic to characterize 23 M.R.S.A. § 3655 as unclear. More realistically, we should say that the presiding Justice, as well as the attorneys, were confronted with a statutory nightmare. Apparently, the presiding Justice, in an effort to produce a semblance of reasoned clarity, chose the option of considering the statute an integral unit. He decided, therefore, that the legislature intended to incorporate as preconditions of the action for loss of life *all* the notice provisions and also the one year limitation for the commencement of the action which the statute had made indisputably applicable to the action for personal injury or property damage.

We disagree. We hold that the dismissal of plaintiff's complaint as to the defendant city was error. Specifically, we conclude: (1) the one year period for commencement of the action was legislatively intended to apply *only* to the action for personal injury and property damage and was without limiting effect as to commencement of the action by the executors or administrators of any person whose life had been lost; and (2) the *only* "notice" requirement applicable to the death action intended by

the words "said notice of the deficiency which caused the loss of life" is the "24 hours' actual notice of the defect or want of repair, * * *." This notice we deem to have been sufficiently alleged in Count III, Paragraph 15 of the complaint of plaintiff by the language that the defendant city "had due notice of the deficiency."[2]

Review of the statutory development unravels the strands of the knot of confusion woven by the present statutory consolidation of the multitude of amendments which have been produced during the one hundred fifty years of Maine's statehood. This statutory history knits a strong fabric of support for our decision.

In 1821 the original statute,—P.L.1821, Chapter 118, § 17—declared the law to be, in substance:

"* * * if any person shall lose a limb, break a bone, or receive any other injury in his person, or in his horse, team or other property"

attributable to

"any defect or want of necessary repair and amendment of any highway, causeway or bridge",

recovery was allowed of

"double the damages"

against

"the county, town, the person or persons who are by law obliged to keep the same highway, causeway, or bridge in repair"

provided, however, that the persons subject to the liability

"had reasonable notice of the defect." (emphasis supplied)

The mechanism of recovery was designated as

"a special action of the case." (emphasis supplied)

In the same single paragraph (§ 17) the legislature considered, in addition, another situation in which "the life of any person shall be lost". (emphasis supplied) As to loss of life caused by "deficiencies" in "ways", the legislature prescribed conditions and procedures differing from those governing personal injury or property damage. As to personal injury or property damage the statute read:

"through any defect or want of necessary repair and amendment of any highway, causeway or bridge"

whereas in describing the evil causing the loss of life the legislature said:

"the deficiency of the way, causeway or bridge"

and included a further circumstance, *omitted in relation to personal injury or property damage,* designated as

"* * * want of rails on any bridge."

Of marked significance to disclose legislative intention that the loss of life principles be separate from, and independent of, the cause of action for personal injury or property damage was the remedial mech-

---

2. We observe that the requirement of 24 hours' actual notice which we now hold to carry over as a condition not only of the action for personal injury or property damage but also for the action for loss of life is conjoined with a limitation of damages to a maximum amount of $4,-000.00 in "case of a town" (city) as distinguished from a county. The present action against defendant city seeks a recovery of $250,000.00. In the posture of the case as it is now before us, the issue of the amount of damages recoverable is absent. We are here unconcerned, therefore, with the issue of whether the recovery limitation of $4,000.00 referable to action for bodily injury or property damage in the case of a *town* (city) is overridden by the language relating *specifically* to the action for loss of life authorizing a recovery of "such sum as the jury may deem reasonable as damages." We expressly disavow any intimation or suggestion by what is stated herein, or decided, as to any opinion on this totally independent issue of the amount of damages recoverable.

anism prescribed for a loss of a life. The recovery was by *criminal,* rather than civil, proceedings. For the loss of life "on a presentment or indictment of the Grand Jury" and "upon a conviction before the Circuit Court of Common Pleas, or Supreme Judicial Court", the persons "convicted" of having caused a loss of life were "liable to be amerced" [3] in a sum, statutorily fixed, of "three hundred dollars"— as distinguished from "double the damages" allowed as the recovery for personal injury or property damage in a "special action on the case." The "amercement" of three hundred dollars was "to be paid to the executor or administrator of the deceased for the use of his heirs." [4] Furthermore, in the delineation of this criminal responsibility for the loss of life the statute pointedly *omitted* as a precondition of the *criminal* liability the requirement specified as a prerequisite of the *civil* liability for personal injury or property damage—that the persons responsible must have "had reasonable notice of the defect."

It is thus apparent that at the commencement of Maine's statehood the legislature had manifested an intention, relative to recovery for "deficiencies" of "ways", to approach the liability imposed for personal injury or property damage by substantive concepts and procedural techniques which were different from, and independent of, those utilized when a loss of life had resulted.

These early and patent differences of approach persisted, and were revealed in various forms, for over fifty years from 1821 through 1874. As of February 23, 1825 the "double the damages" recovery for personal injury or property damage was reduced to "single damages only", but the legislature refrained from altering the criminal remedy for loss of life or the statutorily fixed amount for which the convicted persons were liable to be amerced. (P.L.1825, Chapter CCC, § 3.)

In 1841 the legislature directed its attention *specifically* to the criminal remedy for loss of life. It was amended in four respects, even though it remained a *criminal* proceeding.

First, the concept of "amercement" was changed to "forfeiture"; and, second, the amount of forfeiture was modified from the fixed sum of "three hundred dollars" into a range of "forfeit" allowing payments to the "heirs" "not exceeding one thousand dollars".

Third, for the first time the *criminal responsibility* for a loss of life was subjected to a condition precedent, now inserted *specifically* in the language dealing directly with recovery for *loss of life* (as it had previously been inserted specifically relative to personal injury or property damage), that the person responsible must have had "reasonable notice of such deficiency".

Fourth, the "deficiency" giving rise to the criminal liability for loss of life was amended, as was that generating civil liability for personal injury or property damage, to become identical as "any defect or want of repair, *or sufficient railing,* in any highway, town way, causeway or bridge." [5]

---

3. An "amercement" was similar to a fine except that it was usually used in reference to lesser offenses. Essentially, it connoted the idea that the person convicted was at the "mercy" of the court to liquidate the penalty.

4. This paltry sum of three hundred dollars to be turned over to the heirs for a loss of life would seem to reflect a carry-over of the reluctance of the common law to permit one person to make a judgment as to the worth of the life of any other human being. As of 1821, the idea

that heirs, or other persons financially dependent upon the person killed, had suffered a pecuniary loss as a result of the death was yet to appear. It came into the law at a later time when Lord Campbell's Act was enacted in England in 1846.

5. The previously utilized "for want of rails" concept had thus become transformed into a "want * * * of *sufficient* railing" (emphasis supplied), and whereas, previously, the idea had been restricted to a "bridge" and to "the loss

(emphasis supplied) R.S.1841, Chapter 25, § 89.

From 1841 to 1857 the statute remained essentially unchanged, only minor language amendments lacking substantive effect having been introduced. R.S.1857, Chapter 18, § 61.

Effective March 25, 1863 there was added at the conclusion of the single paragraph (§ 61) language stating "at the trial of any *such action* * * *" a view might be ordered by the court "on motion of either party." [6]

In the year 1870 (effective March 17) and in the year 1874 (effective March 3) the legislature introduced amendments of § 61 of R.S.1857, as amended, which are most crucial and enlightening for purposes of decision of the instant case, especially when these amendments are taken in conjunction with a decision of the Supreme Judicial Court rendered in 1877—Perkins v. Oxford, 66 Me. 545 (1877). The first of these statutes, P.L.1870, Chapter 147, § 61,[7] effected a series of changes of sufficient importance to be discussed in detail.

First, a time limitation was inserted immediately after the specification of a "special action on the case for personal injury or property damage", and it read:

"to be commenced within three years from the date of *receiving such injury or suffering such damage*." (emphasis supplied.)

It is to be stressed that this time limitation, in addition to its being placed in immediate conjunction with the "special action on the case" to provide relief for personal injury or property damage, is worded *specifically* and *uniquely* to have rational bearing *only* upon personal injury or property damage as distinguished from *loss of life*. The time limitation states explicitly that it commences with the date of "*receiving such injury*" or "*suffering such damage*". The logical thrust is thus entirely upon precisely the two concepts which are the essence of a statutory description of the personal and

---

of life" criminal liability, in 1841 this restriction was removed and the "want * * * of sufficient railing" was made applicable to ways as well as bridge and as a basis for civil recovery for personal injury or property damage.

6. This use by the legislature of the word *"action"* could have engendered ambiguity at that time since loss of life was remedied by the criminal procedure of indictment. The question could properly have been raised whether the trial upon an indictment was a trial of an "action" in the sense meant by the legislature when it authorized the taking of a view. The ambiguity could easily have been avoided by the use of a more general concept (instead of the word "action") such as "proceeding", or the legislature could have added specifically to the concept of "trial of any such action" further words such as "or upon such indictment."

The problem is unimportant for present purposes since subsequent amendments to the statute, which we shall discuss hereinafter, ultimately transformed the proceeding for loss of life from one criminal in nature into "an action on the case" and, as the statute now reads since the adoption of our new Rules of Civil Procedure, a "civil action."

7. " 'Sect. 61. If any person receive any bodily injury or suffer any damage in his property, through any defect or want of repair, or of sufficient railing in any highway, town-way, causeway or bridge, he may recover for the same, in a special action on the case, to be commenced within three years from the date of receiving such injury or suffering such damage, of the county, town or persons obliged by law to repair the same, if such county, town or person had reasonable notice of the defect or want of repair. If the life of any person be lost through any such deficiency, his executor or administrator may recover of the parties liable to keep the same in repair, in an action on the case brought for the benefit of the estate of the deceased, such sum as the jury may deem reasonable as damages, if the parties liable had reasonable notice of the deficiency which caused the loss of life; but this act shall not apply to cases now pending, and in any instance where such cause of action has already accrued an action may be commenced within six months from the time this act takes effect.' "

property harm with which it is concerned —*injury* of the person or *damage* to the property—and all in contradistinction to the independent harm of "loss of life." In the loss of life situation there would be need for a more scrupulous delineation since the date when the event occurs, and which would be the date of "receiving personal injury or suffering damage to property", theoretically, could be different from the date on which death occurs. Hence, ambiguity would exist, in the absence of a definitive and explicit legislative statement, as to which date might be intended when there has been a loss of life—date of the event or the date of the loss of life.

Second, and, therefore, when Chapter 147 of P.L.1870 proceeds further to change, for the first time, the remedy for loss of life *from a criminal proceeding*, commenced by indictment with a forfeiture mechanism allowing a maximum payment of one thousand dollars as a monetary payment to the "heirs", into a *civil* "action on the case" brought for the benefit of the "estate"— and the amount of recovery to be an unlimited amount designated as "such sum as the jury may deem reasonable as damages",[8]—special significance must be attached to the *omission* by the legislature of a prescribed time limitation, directly conjoined with the specification of the civil remedy, and within which the newly created civil action must be commenced. It appears rationally difficult to escape the conclusion that such omission reflects that the civil action *for loss of life* should be free of the limitation annexed to the civil action for personal injury or property damage.

The second factor of importance, and in the same vein, is the unmistakable contrast between the legislative handling of the reasonable notice requirement and the time limitation condition. When the legislature wished to add the requirement of notice to the persons liable in the loss of life situation, the legislature accomplished this by adding it expressly *in specific relationship to the loss of life*. The legislature avoided relying upon any reference back to the statement of such notice as it had been written relative to the action for personal injury or property damage. Furthermore, whereas the notice requirement as to personal injury or property damage had always been worded to read only "reasonable notice of the defect or want of repair", when the legislature, by the amendment of 1870, inserted the notice requirement for the first time in relation to the newly created civil action for loss of life, the legislature *repeated* the notice requirement *specifically* in conjunction with the action on the case for loss of life and also phrased the notice requirement in a fashion calculated to show a direct relationship to the loss of life, explicitly stating "notice of the deficiency *which caused the loss of life*." (emphasis supplied) In this manner the legislature revealed its awareness of a technique which readily and unambiguously accomplished the imposition of conditions qualifying, or limiting, the newly created civil action for loss of life resulting from "highway" deficiencies—*when such restrictions were intended*. That the legislature refrained from employing precisely this technique to impose a time limitation for the commencement of the civil action for loss of life, which it had created for the first time by this very statute in 1870, is overwhelmingly potent evidence that the legislature must have intended the newly created action for loss of life resulting from "highway" deficiencies to be free of the three year limitation which it had imposed for the first time, *and in the same*

---

8. Apparently this enlightened change in 1870 to allow a civil action authorizing a recovery of "such sum as the jury may deem reasonable as damages" when "highway" deficiencies have caused "loss of life" antedated the creation of a general wrongful death remedy by 21 years. It was as late as March 31, 1891 that P.L. 1891, Chapter 124 creating the wrongful death action modeled upon Lord Campbell's Act became effective and that the generalized civil remedy to allow pecuniary damages suffered as the result of a wrongfully caused death came into existence in Maine.

*statute*, upon the previously existing civil action for personal injury or property damage caused by "highway" deficiencies.

In the year 1874 (March 3) P.L.1874, Chapter 215, the legislature, without changing any of the language (except insignificantly to alter the words "be lost" to "is lost") pertaining to the action on the case for *loss of life*, amended R.S.1871, Chapter 18, § 65 by inserting in the language relating to the civil action *for personal injury or property damage* a new provision reading:

"and any person who sustains *any injury or damage as aforesaid*, shall notify the county commissioners of such county, the municipal officers of such town, or person, within sixty days thereafter, by letter or otherwise, setting forth his claim for damages, and specifying the nature of his injuries." (emphasis supplied)

The emphasized words have strong tendency to reveal a legislative intention that this *new* requirement of a written notice *after* the occurrence causing harm was to be confined to the action for personal injury or property damage and was without application to the action for loss of life. Clearly, the words "as aforesaid" referring *back* to the *preceding* concepts of "person who sustains any *injury* or *damage*" render any different interpretation incongruous.

Precisely this decision was made by the Supreme Judicial Court within three years after the 1874 amendment in the case of Perkins v. Oxford, 66 Me. 545 (1877). In that case in which the plaintiff administrator was seeking damages for loss of life under R.S. Chapter 18, § 65, the defendant, Inhabitants of Oxford, sought to have the case dismissed on the ground that the amendment contained in Chapter 215, P.L. 1874, requiring the sixty days notice above described, was applicable to the action for loss of life (as well as to the action for personal injury or property damage) and that

plaintiff had failed to comply with it. The Court disposed of the argument in summary fashion with the terse, but pungent, comment:

"Obviously this requirement applies to *another class* of cases [the cases in which personal injury or property damage were involved]. It does not by its terms embrace such as *the one before us*, [an action for loss of life] and could only be made to do so, by a *forced, unnatural and unreasonable construction* which we cannot adopt." (p. 549.) (emphasis supplied)

The analysis which we have already promulgated presents the details justifying the assertion by the court in Perkins v. Oxford that two distinct classes of actions are involved and that the attempt automatically to apply the various specifications relating to the action for personal injury or property damage to the action for loss of life would be "forced, unnatural and unreasonable."

While the precise holding of Perkins v. Oxford is that the sixty days' notice subsequent to the occurrence is irrelevant to an action for loss of life, it is clear that the underlying rationale—the doctrine of the case—is that the requirements referable to the action for personal injury or property damage are without automatic application to the action for loss of life; and that only those requirements governing the action for personal injury or property damage will be carried over to the action for loss of life which plainly and unambiguously dictate such result without resort to "forced, unnatural and unreasonable construction."

Once this doctrine had been formulated in 1877, the legislature *thereafter and until the present* consistently, and persistently, refrained from rewriting the language covering the action for loss of life or from adding to it, expressly and unequivocally, further specific notice requirements [9] or a

9. The requirement existing in 1877 that the parties liable must have had reasonable notice prior to the occurrence was subsequently changed to become, as to the action for personal injury or property damage, "24 hours' actual notice."

time limitation placed in direct and plain conjunction with it.

The nature of the additional notice requirements which the legislature elected to introduce after 1877 have affirmative significance for present purposes. Their importance is that they *expressly confined* applicability to the action for personal injury or property damage. P.L.1879, Chapter 156, inserted: (1) limitation of a maximum recovery of $2,000.00 (now $4,000.00) against "any town or city", and this limitation was made referable directly and explicitly to "any action on account of injury to * * * person and property" (§ 1); and (2) prohibition of a recovery of damages against "any town or city" by one "who has notice of the condition of such way previous to the time of injury, unless he has previously notified" officials whom the statute designates and this prohibition of recovery was restricted to "any case, on account of injury to his person and property, by reason of such defect or want of repair." (§ 3.)

 The foregoing discussion constitutes a summary of all of the material provisions as well as the time and manner in which they became incorporated in the statute which is now before us, 23 M.R.S.A. § 3655. The cumulative effect of this historical résumé is to yield a clarity of legislative design which the face of the statute, as it now reads in its consolidated and revised version, tends to obscure. It is unmistakably shown by the legislative history that (1) the one-year time limitation for commencement of action relates *only* to the action for personal injury or property damage and that the action for a loss of life is unfettered by any such special period of limitation; and (2) the *only* notice requirement which is referable to the action for loss of life is that the parties liable

shall have had "24 hours' actual notice of the deficiency which caused the loss of life."

These conclusions, derived from the statutory history, are strongly supported as well by practical policy considerations. The length of time usually required before a deceased person will be afforded a legal personal representative, in the form of an executor or administrator, suggests the unreasonableness, relative to an action for a loss of life,—and, hence, the wisdom of the legislative avoidance—of requirements (1) that statements of claim and notices must be given within fourteen days after the occurrence or (2) of a time limitation so short as one year for commencement of the action for loss of life.

Furthermore, the problems of proof by an executor or administrator as to whether a deceased person lacked, or had, "notice of the condition" prior to the event as a precondition of ascertaining whether notification by the deceased to a municipal officer was necessary, or, if necessary, had been given will be recognized as of sufficient difficulty to render unrealistic and impractical the imposition of such requirements in actions to remedy loss of life.

The contentions of the defendant city are, therefore, held to be without merit. The dismissal of the complaint of plaintiff as to the defendant, City of Rockland, was erroneous.

The entry is:

Appeal sustained. Case remanded for further proceedings pursuant to this opinion.

MARDEN, J., sat at argument, but retired before the decision was rendered.

This *prior to the occurrence* reasonable notice requirement had likewise applied specifically to the action for loss of life. When the change was made to "24 hours' actual notice" as to personal injury or property damage, the same change was effected as to loss of life by the use of the referral-back word, "said". P.L.1877, Chapter 206, effective February 9, 1877.