**CINCINNATI ST RY CO v WATERMAN**

Ohio Appeals, 1st Dist, Hamilton Co

No 4685.   Decided April 1, 1935

Leo J. Brumleve, Jr., Cincinnati, for plaintiff in error.

August A. Rendigs, Jr., Cincinnati, for defendant in error.

## OPINION

By MATTHEWS, J.

In the first place, the defendant presents as error the action of the trial court in permitting the use, over its objection, of a blackboard at the trial, without requiring the blackboard to be made a part of the record.

It seems that in accordance with a rather common practice a plat or diagram of the street intersection was chalked upon this blackboard by the plaintiff while she was on the witness stand under oath, and was used in the examination of the witnesses both by the plaintiff and by the defendant. It is admitted that this method of presenting the case to the jury might be helpful to the jury and the trial judge, but that the diagram was not authenticated as accurate, as having been drawn to scale, and that, therefore, it might have misled the jury, and also that it prevented the defendant from presenting the entire evidence so as to enable this court to pass upon its assignment of error, that the verdict was manifestly against the weight of the evidence.

In State v Sibert, 169 SE (W. Va.) 410, the court held as stated in the syllabus that:

"Whether blackboard sketch may be exhibited before jury in connection with prosecutor's opening statement, and examination of state witnesses, is largely discretionary with trial court."

In State v Sibert, supra, the blackboard was not introduced in evidence, but the defendant in order to save his objection had a photograph of the drawing taken and that was incorporated in the bill of exceptions. From that it appeared that the drawing was a "crude chalk drawing." The state expressly stated that it was a "rough sketch showing approximately the point of accident." It did not have the sanction of the oath of any witness, still the court held as stated in the syllabus and at page 412 said:

"If there was anything of an evidentiary nature on the map which defendant deem-

ed prejudicial, he should have pointed it out to the court by timely objection. The defendant, under the facts in this case, could not have been hurt by the use of the blackboard sketch."

Mr. Wigmore classifies this method of conveying information under the heading of "Non-Verbal Testimony." In 2 Wigmore (2nd Ed.) at page 88 he says:

"Man does not communicate by words alone; and it may occur that words become inferior to action as a mode of communicating a correct impression of a scene observed. Certainly, in an appropriate case, it is proper and customary for the trial court in its discretion to sanction a departure from the ordinary or verbal medium and permit the witness to make clearer his own observed data by representing them in gesture, dumb-show, or other dramatic mode."

And with reference to the verification he says at pages 98 and 99 that:

"A witness must have had observation of the data in question (ante, §650), must recollect his observations (ante, §725), and must correctly express his observation and recollection (ante §766). Here, then, is a form of expression ready prepared pictorially; he must supply the missing elements; in brief, it must appear that there is a witness who had competent knowledge, and that the picture is affirmed by him to represent it.

"The latter element may be implied from his very oath; the former must appear from his preliminary statements."

It is noted that in the case at bar the original drawing on the blackboard was made by a witness who testified that it represented her recollection of the intersection.

Counsel did not make either the blackboard or a photograph thereof a part of the bill of exceptions. The blackboard was not introduced or offered in evidence. The certificate of the trial judge that the bill of exceptions without the blackboard contained all the evidence is correct. Had the defendant desired to bring this blackboard into the record for any reason, it was his privilege to introduce it. This does not present a case of omission of exhibits from the bill, because the blackboard was not made an exhibit. In reversing the case of **Diamond Rubber Co. v McClurg, 6 C.C. (N.S.) 556,** in which the court had refused to consider the weight of the evidence because the witness had referred to a model

not introduced in evidence, the Supreme Court (**75 Oh St, 608**) directed the Circuit Court to consider the bill of exceptions.

Counsel cites **Dreihs v Taxicabs of Cincinnati, Inc., 45 Oh Ap 129, (14 Abs 378),** in support of his position. All that case decided was, that on account of the use of the blackboard it was made more difficult for the court to pass upon the weight of the evidence. It was not decided or suggested that it was error for the court to permit the use of a drawing upon a blackboard either in examination of witnesses or in argument to the jury. We are of opinion that the extent to which a blackboard may be used in the trial of a case rests in the sound discretion of the trial court, and that if the record presented enables a reviewing court to understand the testimony of the witnesses, it cannot be said that the trial judge abused his discretion on the ground that he permitted a course of trial that prevented the making of a record for the purpose of review. A reading of the testimony of the witnesses discloses that we are able to locate the street car and the automobile at the different times referred to by each and all of the witnesses, notwithstanding the fact that we do not have the blackboard before us. While certain witnesses did at specific places in their testimony refer to points upon the blackboard without describing immediately the point in words referable to the street intersection, this uncertainty in each instance was cured by specific testimony in other places by the same witnesses. This being the situation, we are not precluded or hampered in weighing the evidence. Woodward Iron Co. v Wade, 68 So. (Ala.) 1008, at 1011.

It is always difficult for a reviewing court to pass upon the weight of evidence and the credibility of witnesses. We find no greater difficulty in this case, however, than we would, had no blackboard been used.

The record presents a conflict of testimony between the witnesses for the plaintiff and those for the defendant. The determination of their credibility rested with the jury. The jury saw fit to believe the testimony of the plaintiff's witnesses, and considering their testimony and certain physical facts, including the course of the automobile after the collision, we have reached the conclusion that we cannot say this judgment was manifestly against the weight of the evidence.

The plaintiff sought to recover in addition to damages for personal injury the

damage resulting to her automobile in the collision.

It is claimed that the court erred in permitting the witness called by the plaintiff to testify to the difference between the value of the automobile immediately before the collision in its condition at that time and its value in its damaged condition immediately after the collision. The ground of the objection is that it appeared that the witness placed reliance upon a certain "Blue Book" in which market values were set forth. A reading of the testimony of this witness discloses that he had, from long experience, a knowledge of market values, and that he knew the values set forth in the blue book were correct statements of the market values. We can, therefore, see no error in the court permitting the witness to testify as to his knowledge of the market value; and this is what he did.

At the request of the plaintiff, the court instructed the jury specially, before argument, as follows:

"Members of the jury, I charge you that the Statutes of Ohio granting the right of way to vehicles on main thoroughfares would apply in this case to give the preference to the street car only if the street car proceeding in a lawful manner arrived at the intersection in advance of the automobile, or at the time, or if the two vehicles were approaching from different directions so nearly at the same time and at such rates of speed within lawful limits that if each proceeded without regard to the other a collision was reasonably to be apprehended. Therefore, if you find from the evidence in this case that the automobile driven by Mrs. Waterman was proceeding in a lawful manner and was already in the intersection prior to the approach of the street car, and that the failure of the motorman to grant the right of way to her so that she could complete her crossing in safety was the sole proximate cause of the collision, then your verdict must be for the plaintiff."

The ground of the objection to this charge is that it does not correctly set forth the law as declared in the case of **Morris v Bloomgreen, 127 Oh St, 147.** In that case, the court construed §§6310-28 and 6310-28a, **GC,** and held, as stated in the syllabus, that:

"* * * Construed together these sections confer an absolute right of way upon the vehicle approaching from the right, quali-

fied only by the requirement that, in proceeding uninterruptedly, it must proceed in a lawful manner."

While these sections do not confer a right of way upon a street car (§6290, **GC,** having excluded street cars from the definition of "vehicle"), §6310-31, **GC** does confer the right of way upon street cars in express terms.

This special charge laid down the rule that if a person approaching from the left in a lawful manner "was already in the intersection prior to the approach of the street car," that conferred the right to complete the crossing as against the one approaching from the right. That is not the law as declared in Morris v Bloomgreen, supra. The vehicle lawfully approaching from the right always has the right of way, because the statute so provided. The vehicle approaching from the left never has the right of way as against the one approaching from the right in a lawful manner. The duty to yield to the other lawfully approaching rests upon the vehicle approaching from the left at all times, when yielding by one or the other is required by the situation. As is said in Morris v Bloomgreen, supra, page 154:

"Ordinarily the operator of a vehicle is able to ascertain before he reaches the intersection whether another vehicle is approaching from his right; but, in any event, after entering the intersection he has a further leeway of some distance between the point of entering the intersection and its center for ascertaining such approach before he drives into the path of the vehicle possessing the right of way."

If the vehicle approaching from the right forfeits its right of way by not proceeding in a lawful manner, then there is no right of way and the rules of common law apply. Or, if in any way the person entering from the left is in the path of the one having the right of way, the latter owes the duty of reasonable care, but that is not because the one entering from the left has acquired the right of way. If the plaintiff in this case was stalled on the track, or stopped there because of some obstruction, the defendant owed her the common law duty of using due care not to injure her, but she did not have the right of way. The duty which the person approaching from the right owes to the person approaching from the left, after he has discovered the person's position, is stated in the 5th para-

graph of the syllabus in Morris v Bloom-green, supra:

."The driver of a vehicle lawfully approaching from the right has the right to assume that the driver of the vehicle approaching from the left will obey the law by yielding the right of way. If however the former, just as he is approaching or entering the intersection, discovers that the latter is not yielding the right of way and has thereby placed himself in a perilous situation, it becomes the duty of the former to use ordinary care not to injure the latter after becoming aware of his perilous situation."

Based upon this special charge counsel argued that because the plaintiff's automobile was six feet within the intersection of a street from 35 to 40 feet wide, she had "the right to continue in an uninterrupted manner across the intersection." One theory of the facts justified the argument which demonstrates the prejudicial nature of the charge. It sanctioned the argument which, in effect, was made, that, although the automobile entering the intersection from the left had not yet come into the path of the one just entering from the right, it was the duty of the latter to yield to the former, notwithstanding that if neither yielded a collision would occur. Morris v Bloomgreen, supra, decides just the contrary. The indefinite common law rule had proven wholly inadequate, due to the increased hazards of modern modes of conveyance, and it was in the light of this situation that the definite rule of the statute dependent as little as possible upon specific circumstances and individual judgment was substituted. Public policy demands that the certainty sought be not destroyed by judicial interpretation.

Finally, it is contended that the court erred in refusing to give the following special charge, requested by the defendant:

"Members of the jury, the court charges you that the responsibility of a defendant for its acts is limited by law to only those natural and probable consequences of such acts which might have been anticipated to occur by ordinarily prudent persons as a result of such acts; and if you find that the injuries and damages received by the plaintiff could not have been anticipated by ordinarily prudent persons as a natural and probable consequence of the acts of the defendant, then the defendant, The Cincinnati Street Railway Company, would not be responsible for the plaintiff's injuries and damages regardless of whether or not the acts of the defendant were negligent."

It is our opinion that this charge does not contain a correct statement of the law relating to proximate cause. Of course, the responsibility of the defendant was "limited by law to only those natural and probable consequences", but if the consequences were natural and probable, liability would attach regardless of whether they were anticipated or not. As we understand the law, it is not correct to say that "if you find that the injuries and damages received by the plaintiff could not have been anticipated by ordinarily prudent persons as a natural and probable consequence of the acts of the defendant", then the defendant would not be responsible. If an ordinarily prudent person would not have anticipated the consequence, then it would not have been a natural and probable consequence. If the plaintiff was in the class to whom the defendant owed a duty, it was responsible for the natural and probable consequences of its acts. In determining whether the plaintiff was in the class to whom the duty was owing, regard must be had to what might reasonably be anticipated. As is said in Gedeon, Admr. v East Ohio Gas Co., 128 Oh St, 335, at 338, it is "Only when the injured person comes within the circle of those to whom injury may reasonably be anticipated does the defendant owe him a duty of care." But this case presents no problem of determining whether the defendant owed a duty of care to the plaintiff. There was a direct and immediate relationship. Whatever damage the plaintiff received resulted from the collision of defendant's street car with the automobile. The only consequences at issue were those resulting from that collision. If the collision was the natural and probable result of defendant's negligence, responsibility attached for all damage directly resulting therefrom.

To say in the light of the facts in this case that the liability of the defendant is limited to such natural and probable consequences as an ordinarily prudent person might have anticipated is certainly redundant. It is confusing and probably would mislead the jury to the conclusion that the liability of the defendant was something less than responsibility for the natural and probable consequences of its acts:

We find that the court did not err in refusing this charge.

For error in giving the special charge, the judgment is reversed, and the cause remanded for a new trial.

ROSS, PJ, and HAMILTON, J, concur.