GIBSON, APPELLEE, *v.* JOHNSON, APPELLANT.

(No. 6013—Decided November 26, 1941.)

*Mr. Benjamin S. Schwartz* and *Mr. Morris J. Leher,* for appellee.

*Mr. Leo J. Brumleve, Jr.,* and *Mr. David B. Wood,* for appellant.

MATTHEWS, P. J.   The plaintiff recovered a judgment for damages on account of personal injuries received by him through the alleged failure of the defendant to perform his duty as an occupier of real estate adjacent to a public street in the city of Lockland.

(1)   The defendant has appealed to this court and presses most strongly that there was a complete failure of the plaintiff to locate the defect on the premises occupied by the defendant.   This defect consisted of an earthenware box imbedded in the ground with a metal top level with the surface of the earth so constructed and maintained that when pressure was exerted in a certain way upon the top it would tilt and allow objects to fall or extend into it.   The claim of the plaintiff, which the jury sustained, was that on the night of February 7, 1938, he stepped on the lid which tilted and allowed his foot and leg to extend into the opening thereby causing his injuries.

The purpose of this box was to house the water meter for the premises occupied by the defendant.   It was undoubtedly located near the line dividing the public street from the private property possessed by the defendant.   It is the contention of the defendant that there is no evidence from which a jury could draw

an inference that it was on the defendant's side of the line. If that is a correct evaluation of the record, then the defendant was not shown to owe any duty with reference to this defective condition.

It is undoubtedly true that the language contained in the bill is very vague on this subject, and if we regarded the language of the questions and answers alone it would seem that there was a studied avoidance of definiteness on this point. However, the record shows that a drawing was made on a blackboard and that this drawing was constantly referred to by the examiners and the witnesses. This drawing, while not verified as to accuracy or scale, did show a dividing line between the street and the private property, and witnesses used this drawing to give meaning to the words used.

This box was sometimes referred to as a manhole. One witness testified:

"Q. You are describing the manhole, where is that? A. This manhole is, I would say, about eight or nine —about eight feet probably from the stone entrance here.

"Q. Yes. A. There. (Indicating.)"

Now, we cannot determine from the record whether the witness indicated a point in the public street or on the defendant's property, but the trial court and jury labored under no such incapacity. Indicating in that way would be just as effective a means of communication as the most specific language and there is no legal rule against resort to that method. 2 Wigmore on Evidence (2 Ed.), 88, 98 et seq., Sections 790 and 793 et seq.; 3 Wigmore on Evidence (3 Ed.), 172, Section 790.

In Cincinnati Street Ry. Co. v. Waterman, 50 Ohio App., 380, 198 N. E., 494, we have stated our views on the subject of the use of a blackboard drawing in a

trial and need not repeat them here. The court in its discretion permitted its use, but it was not introduced in evidence and therefore its absence from the bill does not negative the certification that the bill contains all the evidence.

The use of the blackboard drawing was not objected to and there was no objection to the witness testifying by reference to the drawing rather than by oral testimony.

We are therefore confronted with a complete bill setting forth all the means employed to communicate to the jury the evidence relied on to prove a breach of duty by the defendant. We are required to place upon the recitals in the bill the construction most favorable to the plaintiff because error is never presumed. It must affirmatively appear and be prejudicial to justify a reversal. Now the trial court certified that the witnesses indicated on the blackboard drawing where the box was. The drawing, regardless of its accuracy in other respects, showed the relative positions of the public street and the private property and the dividing line. This court reviewing the record must assume that the witness pointed to the location of this water-meter box on the defendant's property.

If a different location was indicated, it was the duty of the litigant whose interest would be served thereby to make the record affirmatively show it. The defendant was not required to submit to this method of proof nor was he precluded from developing by oral testimony on cross-examination or otherwise, so that any error would be manifest upon the record. There is corroborating evidence that the water box was on the defendant's property.

We cannot say that the court erred in overruling the defendant's motion for an instructed verdict.

(2) This case went to trial upon the third amended

petition and the answer thereto. In this amended petition the plaintiff alleged that the defendant was in possession and control of the premises on which this meter box was located. In the answer there was a general denial and affirmative allegations that the premises abutting on the street at that place were owned and possessed jointly by the defendant and his wife. It is now urged that the evidence proves those affirmative allegations and the legal conclusion is asserted that a nonjoinder appears fatal to the maintenance of this action.

A careful reading of the evidence on this subject has led us to the conclusion that the evidence is conflicting on this subject.

The trial court took notice of this defense in the charge and instructed the jury that the burden of proving the joint ownership rested upon the defendant, and then ignored it as an issue and submitted the case to the jury and made its verdict depend entirely on the findings as to the other issues. If it was an issue in the case, the verdict should have been made dependent upon the finding of the jury as to it.

The record therefore presents the question of whether this is a case in which all those having an interest in the real estate upon which this water-meter box was located should have been joined as defendants in an action by one who has been injured by a defective condition of the premises.

This is an action *ex delicto* and it is conceded that the general rule is that joint tort-feasors may be sued separately, but the contention is that where the liability for the tort grows out of the ownership of real property held jointly or in common all must be joined as defendants. Statements in 30 Ohio Jurisprudence, 783, Section 55, 20 Ruling Case Law, 678, 679, Section

17, and 47 Corpus Juris, 86, Section 173, are cited in support of the proposition.

An examination of the cases cited as authority for these texts shows that while each contains the statement of the rule, in not one was it necessary to the decision. In not one did the action fail because of the non-joinder, the courts holding in each case that the joinder was not necessary notwithstanding the damage resulted from the condition of the real estate.

The first American case in which the suggestion was made that there might be a tort growing out of the ownership of land under such circumstances as to require the joinder of all the co-owners as defendants was *Low* v. *Mumford,* 14 Johns. (N. Y.), 426, 7 Am. Dec., 469, decided in 1817. This case is cited in most, if not all, of the later cases in which this exception to the rule that joint tort-feasors may be sued jointly or separately is mentioned. The action was " 'for keeping up a mill dam * * * below the lands of the plaintiff, whereby the water of the river was set back' " onto the plaintiff's land. The court referred to two old English cases to illustrate the scope of the exception. In one, Lord Kenyon said: "Where there is any dispute about the title to land, all the parties must be brought before the court," and the other was an action to enforce the duty to repair a wall on the bank of the Thames enjoined upon the proprietors and the court held that the gist of the action was that the defendant was a proprietor and that all proprietors should be joined. After referring to these English cases, the court said:

"Here needs no averment that the defendant owned the land on which the dam was kept up. The title to that land cannot come in question in this suit, for the maintaining such a dam is equally a nuisance, and the defendants are equally liable for damages, whether

the defendants own the land as joint tenants with others, or whether they are sole proprietors, or whether they have any right whatever in it. *'Keeping up'* the dam implies a positive act of the defendants: it is a malfeasance, and therefore, the plaintiff has a right of action against all or any of the parties who keep up that dam. Unless the title comes in question, there is no difference, in this respect, in cases arising *ex delicto,* between actions merely personal, and those which concern the realty. The plaintiff, in such an action, is always bound to join his co-tenants, because his title must come in question as the foundation of his claim; but he may sue any or all who have done the tortious act.''

The court then held that there was no defect of parties and reversed the judgment for the defendant.

The title to this real estate could not be placed in issue in this case. The liability of the defendant results from his actual possession or occupation. 2 Restatement of Law of Torts, 987, Section 364. It would avail him nothing to prove that he did not have a vestige of lawful title. When he took possession and control he became charged with the duties resulting from dominion so·long as he continued to exercise such dominion. He cannot escape liability for negligence while exercising dominion by pleading and proving another wrong committed by him against the lawful owner. In 4 Restatement of Law of Torts, 452, Section 882, it is said:

''Where each of two or more persons is liable for the full amount of damages which are allowed for a single harm resulting from their tortious conduct, the injured person can properly maintain a single action against one, some, or all of them.''

In comment *a* on this section, it is stated that: ''The rule stated in this section permits joining in one action

any number of tort-feasors * * *. It applies * * * where they are liable because they are co-owners or subject to a common duty * * *."

So we conclude that no prejudicial error was committed by not making the verdict dependent upon finding upon this immaterial issue.

(3) The evidence shows that the plaintiff was lawfully on the sidewalk. It was in the night season. In order to allow others to pass, he stepped aside and unwittingly stepped onto this water-meter cover which the evidence shows was defective and located within a few inches of the sidewalk, if not actually touching it. There was no guard or other obstruction between the sidewalk and the water-meter box. Under such circumstances the plaintiff cannot be charged with trespassing and thereby barred from recovery. The propinquity made the public street dangerous for those lawfully upon it. It created an unreasonable risk. 2 Restatement of Law of Torts, 995, Section 368.

(4) It is contended that the court invaded the province of the jury by assuming that this water meter was on private property and not in the public street.

We find that the court submitted to the jury the issue of whether the defendant was the occupant and in control of the real estate on which the water meter was located.

Now it was undisputed that the defendant was in control of the premises abutting on the public street at that place. It was equally clear that he was not in control of the public street. The sole issue in this respect was whether the water meter was in the street or on the defendant's private property. Under such circumstances, the language of the charge was clear enough to advise the jury of the issue submitted to it.

(5) A witness called by defendant testified that this water meter did not have any flanges or lugs on it. Counsel then sought to refresh his recollection by

asking him if he did not state to him before going on the stand that the lid did have flanges or lugs. The court refused to permit this.

The extent to which a litigant may refresh the recollection of his own witness is largely in the discretion of the court, and while it should be permitted where surprise is manifest, refusal does not always constitute error so prejudicial as to require a reversal. That is the situation in this case. There was no real issue on that point. The plaintiff testified that there were flanges or lugs.

We find no prejudicial error in the record and the judgment is affirmed.

*Judgment affirmed.*

HAMILTON and ROSS, JJ., concur.