Jacqueline E. **THORBJOHNSON**,
Administratrix of the Estate
of Russell E. Kaler

v.

**ROCKLAND-ROCKPORT LIME CO., INC.,**
and City of Rockland.

Supreme Judicial Court of Maine.

Aug. 27, 1973.

David A. Nichols, Camden, for plaintiffs.

Mahoney, Robinson, Mahoney & Norman by Lawrence P. Mahoney, Robert F. Hanson, Portland, Grossman, Faber & Miller by A. Alan Grossman, Barry M. Faber, Rockland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

Since December 1, 1969, the date when the complaint was filed, this action has had

an extraordinarily large amount of in-court judicial attention.

In January, 1971, this Court decided a procedural question which arose during the course of the litigation. Thorbjohnson v. Rockland-Rockport Lime Co., Me., 272 A. 2d 779.

In April, 1971, we sustained the appeal from the granting of the motion to dismiss the action and remanded the case to the Superior Court for further proceedings. Thorbjohnson v. Rockland Lime Co., Me., 275 A.2d 588.

Such further proceedings were had.

Trial was commenced May 31, 1972, which trial terminated when the presiding Justice granted a motion for directed verdict made pursuant to Rule 50(a), Maine Rules of Civil Procedure, on behalf of each defendant.

We are required in the present appeals to determine the correctness of the action of the Superior Court Justice.

We sustain the appeals by plaintiff.

From the evidence adduced at trial a jury could have concluded that: On December 2, 1967, the weather was fair, visibility unimpaired and the roads dry. At approximately 1:00 p. m. on that date Russell Kaler, accompanied by three of his sons, left the home of his mother, Mrs. Charlotte Kaler. He was driving a black 1965 Mercury station wagon with artificial wood panels.

Russell Kaler was last seen traveling in a southerly direction on Old County Road in Rockland towards his home. At approximately 1:30 p. m. a Maine State Trooper received a radio call to investigate an accident on Old County Road. He arrived at the scene at approximately 1:35 p. m.

The site of the accident was 1.1 miles south of the Charlotte Kaler home. Tracks at the scene indicated that a vehicle, proceeding in a southerly direction, had left the paved portion of Old County Road, proceeded 53 feet six inches along the westerly edge of the road, struck a mailbox located approximately four feet from the edge of the tarred surface of the road, continued on along the westerly side of the road for 23 feet where it grazed a power company pole, then, five feet further, returned to the paved portion of the road. The vehicle then apparently skidded along and across Old County Road for 32 feet and left the road on the easterly side.

The vehicle knocked down six guardrail posts. These wooden posts were 5 or 6 inches in diameter and were connected with two strands of one-inch wire cable. The vehicle then skidded approximately 130 feet along the grassy area behind the guardrails.

The tracks stopped at the edge of a quarry.

An apple tree and a stump at the edge of the quarry showed signs of having been struck by a vehicle.

The investigating officer saw an oil slick, bubbles and floating apples directly below the stump on the surface of the water collected in the quarry.

The edge of the quarry was eight feet eight inches from the edge of the paved portion of Old County Road. The surface of the water was 90 feet below the rim of the quarry. A plumb line was lowered 200 feet below the surface of the water without striking bottom.

Search operations were conducted at the quarry over a period of 12 days. A few days after the accident the body of a young boy was recovered from the quarry. Subsequently a black 1965 Mercury station wagon with articifial wood panels was hoisted from the quarry. A certificate found in the glove compartment indicated that the car had been registered by Mrs. Alice Kaler, the wife of Russell Kaler. The car contained the body of a second boy. No other bodies were recovered from the quarry.

Alice Kaler had neither seen nor heard from her husband since Dec. 2, 1967.

Plaintiff's complaint against the City of Rockland is based upon that provision of 23 M.R.S.A. 3655 which provides that:

"Whoever receives any bodily injury or suffers damage in his property through any defect or want of repair or sufficient railing in any highway, town way, causeway or bridge . . . .

If the life of any person is lost through such deficiency, his executors or administrators may recover of such county or town liable to keep the same in repair, in a civil action, brought for the benefit of the estate of the deceased, such sum as the jury may deem reasonable as damages, if the parties liable had said notice of the deficiency which caused the loss of life."

Plaintiff alleges that the death of Russell Kaler, her intestate, was caused by the "want of . . . sufficient railing" on Old County Road.

The City of Rockland, in its motion for a directed verdict, contended that it had not received the required statutory notice.

We had occasion to fully discuss the notice requirements of 23 M.R.S.A. 3655 when this case came before us the second time. (Me., 275 A.2d 588 (1971)). Of the three notice provisions delineated in the statute we held that:

". . . the *only* 'notice' requirement applicable to the death action intended by the words 'said notice of the deficiency which caused the loss of life' is the '24 hours' actual notice of the defect or want of repair' . . . ." *Id.* at 591–592.

The Highway Superintendent of the City of Rockland testified that the same type of guardrails had been maintained at the accident site for 20 years. The superintendent also testified that he was familiar with the accident scene. He thereby became chargeable with knowledge of the conditions existing, i. e., the type of guardrail and posts and their proximity to the quarry.

■ Since the City had erected the guardrail, no additional information need have been brought to the City's attention to charge it with "actual notice of the defect or want of repair," if the jury concluded the guardrail was in fact insufficient under the circumstances there existing.

The holding of this Court in Buck v. City of Biddeford, 82 Me. 433, 19 A. 912 (1890), is supportive of our position. The street commissioner of the City had caused an iron grating to be installed over a cesspool. The grating was insufficient in that the space between the outside bar and the rim of the grating was wide enough to receive a horse's hoof. In plaintiff's suit to recover the value of his horse, destroyed because it had broken a leg in stepping through the grating, the Court held that:

". . . the statutory notice of twenty-four hours is unnecessary; that notice of a fact to a person who already 'knows the fact can not be useful.' . . . He [the street commissioner] know its [the grating] condition from the beginning, and no other or further notice was necessary." *Id.* at 437–438, 19 A. at 913.

The second issue raised by the City's motion relates to the standard by which the sufficiency of a railing is to be judged.

■ While we do not feel this occasion requires that we attempt to lay down standards applicable to every situation, suffice it to say at this time that at minimum the railing must be sufficient to furnish the requisite protection to one who has the right to use the highway and who is using it in a reasonably foreseeable manner. The safety of a roadway must be determined "in view of such casualties as might reasonably be expected to happen to travellers." Morse v. Inhabitants of Belfast, 77 Me. 44, 46 (1885).

■ The obligation which arises from the legislative mandate that a "sufficient" railing be maintained becomes measured, in part, by the general principle that the greater a foreseeable danger the greater the degree of precaution required to be taken to meet the standard of "sufficiency." Horton v. MacDonald, 105 Conn. 356, 135 A. 442 (1926).

Respect must be given to the rights of persons having the right to use the highway. One may be engaged in lawful use of a highway even while not proceeding along what is ordinarily the traveled portion of such highway.

■ The law recognizes that one who has the right to use the highway may be engaged in a use of it which is reasonably foreseeable even though he is not proceeding along what is ordinarily the traveled portion of such highway. Some deviations from the traveled portion of a roadway are reasonably to be expected in the ordinary course of travel. Martin v. Southern Bell Telephone & Telegraph Co., 126 Ga.App. 809, 192 S.E.2d 176 (1972).

In Durst v. Wareham, 132 Kan. 785, 297 P. 675 (1931), a cyclist who skidded off the street due to ice and snow was considered in reasonably foreseeable use of the highway.

One can easily conceive of other inadvertent deviations from the highway which may occur in ordinary travel. These deviations may result, for example, from such foreseeable causes as a mechanical malfunction, a collision with another vehicle or a driver's sudden physical disability.

Deviations by one who has the right to use the highway need not necessarily be the result of inadvertence. Intentional deviations to avoid an obstruction or to avoid a collision with a pedestrain or another vehicle, situations in which an emergency arises, Coombs v. Mackley, 127 Me. 335, 143 A. 261 (1928), are reasonably to be anticipated.

In Larkin v. Andrews, 27 Ga.App. 685, 109 S.E. 518 (1921), the plaintiff, a pedestrian alleged that "he was compelled by the rapid approach of an automobile" to leave the highway. The trial court dismissed his complaint against the adjacent landowner who had permitted a live electric wire to remain hidden in the weeds beside the road. The appeals court reversed holding that the complaint raised an issue as to negligence, to be determined by a jury. In Gibson v. Johnson, 69 Ohio App. 19, 42 N. E.2d 689 (1941), a pedestrian was allowed to recover damages for injuries received after he left the sidewalk in order to allow others to pass. See, Restatement (Second) of Torts § 368, comment f at 270 (1965).

These deviations are examples of instances where one who has the right to use the highway may be reasonably foreseen to be in need of the protection of a sufficient railing. 23 M.R.S.A. 3655 obligates the City of Rockland to provide that protection.

The question of the sufficiency of the railing relative to reasonable expectancies concerning the manner in which the highway will be used by those who have a right to use it requires that consideration be given to the circumstances surrounding the places where the railings are located.

Old County Road, at the scene of the accident, was straight and level for a considerable distance.

The paved portion of the road was approximately nineteen feet in width.

The highway itself presented little danger of causing deviations from the highway as it would if it contained sharp curves or if it were not level.

But the highway passed within eight feet of a gaping quarry, at least 200 feet deep at the accident site, partially filled with water. The ground between the pavement and the edge of the quarry sloped downward.

As a general rule, "sufficiency" in any given case is an issue for the finder of fact. Barnes v. Inhabitants of Rumford, 96 Me. 315, 52 A. 844 (1902).

Here, the jury would have been warranted in finding that a deviation from the easterly portion of Old County Road at this point would almost certainly result in the vehicle plunging into the quarry but for a sufficient railing.

The jury could also have found that Old County Road was not an unfrequented country road but one which carried a significant amount of traffic. The amount of traffic would also have been a factor in the jury's determination of the danger, hence in its determination as to the sufficiency of the railing.

The jury could have decided the sufficiency of the railing maintained on Old County Road against this background of the opportunity for deviation and the enormity of the danger to those whose deviations were not controlled.

The jury would have been warranted in finding that "sufficiency," in the circumstances of this case, required a railing which would prevent vehicles rightfully upon the highway and which are being operated in a manner reasonably to be anticipated from leaving the easterly side of Old County Road.

In addition, the jury had before it evidence that the Kaler car was not stopped by the existing guardrail. This fact is not proof, in and of itself, of a "want of . . . sufficient railing." But if, here, this fact could be justifiably coupled by the jury with an additional conclusion of fact that Kaler's operation of his vehicle was surely a reasonably expectable use of the highway because the evidence had failed to establish, as the law allocates ultimate burdens of proof, that Kaler's operation of the vehicle had been other than reasonably careful, these facts, in combination with the further facts that the photographs in evidence showed the type of railings and posts existing at the time of the accident and that the guardrail failed to prevent the Kaler car from plunging into the quarry, would justify a jury conclusion that the guardrail was insufficient, whatever the standard of sufficiency.

Thus, attention must be directed to the possible applicability of the provisions of 14 M.R.S.A. 160:

"In actions to recover damages for negligently causing the death of a person . . . the person for whose death . . . the action is brought shall be presumed to have been in the exercise of due care at the time of all acts in any way related to his death or injury, and if negligence of the deceased is to be relied on as a defense, it shall be pleaded and proved by the defendant."

By its literal language this statute is concerned with actions for "negligently causing the death of a person." The statutory cause of action for highway defects under 23 M.R.S.A. 3655, does not depend, however, upon a showing of negligence.

"Regardless of the cause of the defect, if in fact the way is not reasonably safe and convenient, the town is liable to the traveller who is injured thereby in his person or property, and it is immaterial whether the defect arises from the negligence of the town or city officials, or from causes which could not be avoided or controlled by them in the exercise of ordinary care and diligence, including the acts or omissions of others." Wells v. City of Augusta, 135 Me. 314, 316, 196 A. 638, 639 (1938).

Did the Legislature intend that 14 M.R.S.A. 160 apply in death actions arising under the highway defect statute?

We think that it did.

In 1913 the Legislature first enacted a statute altering the common law rule of allocation of the burden of proof on the is-

sue of contributory negligence.[1] In cases where the injured party died as a result of another's negligence or died prior to the time of trial of a negligence action, the defendant had the burden of pleading and proving contributory negligence.

Although the 1913 statute was addressed to "cases of negligence," the recorded debates indicate that the statute was to apply to the defense of contributory negligence in highway defect actions. A proponent of the act, and a member of the judiciary committee which unanimously supported the measure, gave as one example of when the statute would be applicable the case of a man who died when his carriage plunged over the edge of a bridge which lacked a sufficient railing.[2]

An opponent of the measure pointed out that a proposed Workmen's Compensation law would eliminate most cases where the defense of contributory negligence might arise. The remaining instances where a decedent would be presumed to have been in the exercise of due care under the proposed statute were limited, but in this Senator's view included actions for death due to highway defects.[3]

The 1913 statute remained in effect until 1959 at which time the Legislature, as part of an act affecting "certain statutes relating to court process and procedure," repealed it.[4] However, in 1967 the earlier statute was re-enacted in substantially the same form.[5] This statute (14 M.R.S.A. 160) was passed as part of an "omnibus bill" to correct "errors and inconsistencies" in the laws of Maine.

■ From this legislative history it is apparent that in 1967, the Legislature sought to reimpose the pleading and proof requirements on the issue of contributory negligence which were first imposed in 1913, i. e., that in *any* death action, whether common law or statutory, where the negligence of the plaintiff could be used as a defense, the burden of pleading and proving plaintiff's negligence fell upon the defendant.

■ The presiding Justice could not, therefore, as a matter of law, rule that the physical evidence at the accident site established that the Kaler vehicle was being operated in a manner other than in the exercise of due care by Kaler, let alone that the operation was in a manner placing it beyond the ambit of that which was a reasonably foreseeable use of the highway.

Since the jury was entitled on the evidence, to conclude that the Kaler vehicle was being operated without a violation of due care and had not been stopped from plunging into the quarry at a site heavily fraught with danger, the question of the sufficiency of the railing was an issue of fact for the jury.

For this same reason—that the jury would be warranted in a conclusion that Kaler's driving was in a manner consistent with the exercise of due care, and therefore, within the range of reasonably foreseeable uses of the highway—the presiding Justice was not entitled to conclude, as a matter of law, that the plaintiff had failed to establish legal causational relationship between an insufficiency of the railing and the death of Russell Kaler.

■ The statute with which we are concerned relates to bodily injury or damage suffered "through any defect or want of repair or sufficient railing."

The word "through" as used in this statute is synonymous with the phrase "occasioned by" or "because of."

1. P.L.1913, c. 27.

2. Me.Leg.Rec. 457 (1913) (Remarks of Senator Hersey).

3. Me.Leg.Rec. 449 (1913) (Remarks of Senator Bailey).

4. P.L.1959, c. 317, § 176.

5. This section was enacted as P.L.1967, ch. 494, § 15-A. The law became effective on October 7, 1967, approximately two months prior to the accident here in question.

 This provision of the statute requires that every happening, for which it is claimed responsibility is upon the town, be examined to determine its "cause."

The earliest cases treating with the subject in this State resulted in the rule being pronounced that the defect in the highway, to occasion liability on the town, must be the sole "cause" of the harm which befell the traveler. See for example: Moore v. Abbot, 32 Me. 46 (1850).

The resultant confusion is best illustrated by a comparison of the majority opinion and the minority opinion written by Appleton, C. J., in Moulton v. Sanford, 51 Me. 127 (1862).

As we suggested in our recent opinion in Wing v. Morse, Me., 300 A.2d 491 (1973), attempts to determine what is the "cause" of a happening has produced an overabundance of confusion.

In the first place, it must be borne in mind the word "cause" has no fixed meaning. The word is often used in the philosophical sense where it is intended to describe causation in fact. As Professor Prosser in his treatise on torts (Prosser, Law of Torts, 4th Ed. 1971, p. 237) said:

"causation is a fact. It is a matter of what has in fact occurred. A cause is a necessary antecedent: in a very real and practical sense, the term embraces all things which have so far contributed to the result that without them it would not have occurred."

The word is frequently combined with the word "proximate" to describe the sum total of those limitations on liability for having caused an event, in the philosophical sense, which the law imposes for reasons of policy.

In the instant case the statute imposes upon the town the duty of erecting "sufficient" railings along its highways where the circumstances demand such railings be erected for the protection of travelers who have a right to be upon the highway and are making a reasonably foreseeable use of it.

There would never be an occasion for a railing if travelers always remained in the traveled portion of the highway. A railing becomes a necessary protective device only upon the occasions when a traveler deviates from the traveled portion of the highway (whatever may be the reason).

It follows then, that if the rule is that the town's liability results only when the sufficiency of the railing is the sole "cause" (using that term in its philosophical sense) liability of the town can never arise.

Obviously, the presence or absence of "sufficient" railing can become a factor in creating or avoiding harm only when a traveler has deviated from the traveled portion of the way.

 It is completely illogical to suggest that the act of deviating from the traveled portion of the way is a "contributing cause" of an untoward happening, which "contributing cause" relieves the town of liability for failure to erect and maintain a "sufficient" railing.

This is so despite the fact there is no gainsaying the deviation from the traveled portion of the way is a "cause" (in the philosophical sense) and a very substantial "cause" in that sense.

In Morneault v. Hampden, 145 Me. 212, 215, 74 A.2d 455 (1950), Justice Williamson (later Chief Justice), quoting from the Court's opinion in Barnes v. Rumford, 96 Me. 315, 52 A. 844 (1902), said:

"If the negligence of the plaintiff, or any other *efficient independent cause* for which neither the plaintiff nor the town is responsible, contributes to produce the injury, the plaintiff cannot recover. It must appear that the defect in the way was the sole cause of the injury." (Emphasis supplied)

"Sole cause" in that case described a "cause" with which there was no *efficient independent* cause" cooperating.

In Spaulding v. Winslow, 74 Me. 528, 533 (1883), Mr. Justice Peters (later Chief Justice), distinguished between "a condition" and "a cause," when he said:

"The town says, we were not responsible for the hole in the culvert, and, if the hole had not been there, the accident would not and could not have happened. Therefore, the defect for which we were not responsible, must, ex necessitate, be considered to be the legal cause of the accident.

"We do not concur with the defendants in this view. We think the only purpose of the statute was to screen a town, not having the twenty-four hours' notice, from the consequences of a defect, in cases where the defect operates as a proximate cause of an injury. Our judgment is that the hole in the culvert might be an object or thing without the existence of which the accident could not have happened, and still be no part of the legal cause of the accident. It might have its remote and indirect influence in the same manner that many other objects and things, which are not defects upon a highway, would have in many cases. The statute declares that, under the circumstances in proof, the hole in the culvert shall not be regarded as a defect. So the law says a bit of white paper shall not be. But the hole or the paper may be the remote, and some real defect be the proximate cause, of an accident."

Determination of "legal cause" or "proximate cause" can never be reduced to absolute rules. As Street in his treatise on legal liability says:

"It [legal cause] is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent . . . ." 1 Street, *Foundations of Legal Lia.* (1906) 110.

Although many tests or formulas have been proposed as a universal solvent for problems of causation such as "the nearest cause," "the last human wrongdoer," "the substantial factor test," "the justly attachable cause test" and "the sine qua non rule," in the context of this statute, it can be said the City of Rockland is legally responsible for Mr. Kaler's involvement with the extreme hazard adjacent to the highway, i. e., the water-filled quarry because of the insufficient railing, if, "but for" such insufficient railing the involvement with the quarry would not have occurred.

Those many Maine cases such as Barnes v. Rumford, supra, which declare "it must appear that the defect in the way was the *sole* cause of the injury" must be interpreted to mean that the chain of causation flowing from the "defect or want of repair or sufficient railing" must not be broken by any *intervening efficient independent cause* if liability on the town is to attach.

If it is reasonably foreseeable that automobiles will deviate from the traveled path of the highway in the vicinity of the quarry, it cannot be said such deviation is an *intervening efficient independent cause*. Hatch v. Globe Laundry Co., 132 Me. 379, 171 A. 387 (1934).

If, from the evidence, it is found that the plunge into the quarry would have occurred even if there had been a railing which complied with the legal requirement that it be a "sufficient railing," then it cannot be said the injury occurred "through any defect or want of repair or sufficient railing." For example: If the railing was "sufficient" in legal contemplation but fails to prevent a vehicle plunging into the quarry because the speed of the vehicle is so great and unreasonable that a legally "sufficient" railing could not withstand the force of the impact with such vehicle, the "legal cause" of the plunge into the quarry is the speed of the vehicle and not any default of the town.

Here, if the railing was in fact not "sufficient" within the purview of the statute, it cannot be said as a matter of law that the death of Russell Kaler did not occur "through any defect or want of repair or sufficient railing," on the ground that the conduct of Russell Kaler was an intervening efficient independent cause—especially since, as above clarified, the jury would have been warranted in concluding that Kaler had been operating the vehicle in a manner consistent with the exercise of due care.

The City of Rockland rested without presenting any evidence. It relied upon plaintiff's evidence, and that adduced by the Lime Company, to establish intervening efficient independent causative conduct on the part of Russell Kaler.

That evidence consisted of a physical description of the accident scene, the path which the Kaler car traversed as indicated by marks on the highway and the six broken guardrail posts.

■ The mere fact that the car left the traveled portion of the roadway is not conclusive evidence of negligence because as we have already stated, deviations both inadvertent and intentional may occur during the lawful use of a highway.

No expert testimony was presented which related the speed of the automobile to the force necessary to break six guardrail posts in light of the distance traveled by the car after it left the normally traveled portion of the highway. This would have been an acceptable method, which the City might have employed, to establish Russell Kaler's negligence if he was in fact negligent. Parker v. Hohman, Me., 250 A.2d 698 (1969). In fact, no evidence of the permitted speed on Old County Road was ever presented.

The City contends that the guardrails in place on Old County Road were of a standard type commonly used throughout the State and the plaintiff had not shown that a reasonably available alternative would have provided greater protection to travelers.

■ Custom cannot be determinative of the question of the standard which the railings must meet. The T. J. Hooper, 60 F.2d 737 (2nd Cir. 1932).

■ The jury would not be bound to find the guardrail in the instant circumstances sufficient merely because it is employed in places along other highways in the State.[6]

■ Further, when, as here, there exists adequate evidence to support a finding of fact that there was an insufficient railing in light of the nature of the site and the uses of the highway which could be reasonably anticipated, it is not plaintiff's burden to come forward with proof that there was some alternative type of railing which the City could have used to furnish greater protection.

■ We need not now decide whether the statutory standard of sufficiency mandates that the City would be liable, in any event, if such alternative were not available at all or were available only upon terms and conditions which could be deemed unreasonable. It suffices that we here decide that, on the evidence here of record, as delineated ante, it was the burden of the defendant City, and not of the plaintiff, to come forward with such additional evidence as would tend to show the circumstances concerning the availability or non-availability of alternatives which could have provided greater protection to travelers. Since the defendant City had failed to present any evidence on these matters, there could not have been any rational basis on which, in relation to them, the presiding Justice could properly have

6. In fact the jury, from its experience might not have found the wooden post-cable railing guardrail "standard." Steel posts, steel ribbons rather than cables, or even concrete guardrails have been in use in Maine prior to this accident.

arrived at conclusions which, as a matter of law, would defeat plaintiff's action.

We have determined that the City had the requisite notice. The circumstances at the site of the accident were so fraught with danger that the jury would have been entitled to define a sufficient railing as one which would prevent an automobile being operated in a reasonably foreseeable manner (and even if negligently) from leaving the highway, thus, with practical certainty, to plunge into the quarry. In addition, since here the provisions of 14 M.R.S.A. § 160 placed the ultimate burden of proof upon the defendant City to establish defendant's lack of due care, the evidence was plainly insufficient, particularly since it required conclusions to be drawn only from physical evidence [7] to justify a conclusion, as a matter of law, that Kaler had been operating the vehicle negligently. It was, therefore, open to the jury to conclude that the Kaler automobile, while being operated with due care, was not stopped from plunging into the quarry and, on this basis, the jury would have been justified in finding that the railing was insufficient and such insufficiency was a proximate cause of Russell Kaler's death.

For these reasons, the granting of the City's motion for a directed verdict was error.

Defendant Rockland-Rockport Lime Company advanced six points in support of its motion for a directed verdict. The Company argued that ownership of the quarry at the scene of the accident had not been proven; that the death of Russell Kaler had not been proven; that no duty existed to prevent travelers from falling into the quarry; alternatively, that if any such duty did exist there was either no breach of the duty or the duty was imposed by statute upon the City; and that even if the Company had a duty to trave-

lers, in light of the deceased's negligence, the breach of duty by the Company was *not the proximate cause of the death.*[8]

No direct evidence as to who held legal title to the land at the site of the accident was ever introduced at trial.

■ Liability does not however depend upon legal title. Gibson v. Johnson, 69 Ohio App. 19, 42 N.E.2d at 692 (1941).

If the jury could reasonably infer that the Company controlled the quarry at the accident site, then this part of the Company's argument would fail.

The President of the Company testified that the Company owned "part of the quarry." He further testified that he visited the scene on the day of the accident and revisited the scene several times during the days when search operations were being conducted. He also testified that he attempted to aid the search effort by granting "access by whatever route they [those engaged in the search] wanted to the quarry." This constituted the entire evidence received upon the issue of ownership or occupancy.

■ From this unrebutted evidence the jury could reasonably have inferred that in light of the interest and involvement of the Company's highest officer in the search effort, the accident scene was included in that "part" of the quarry owned and occupied by the Company.

The argument that Russell Kaler's death has not been proven is without merit. In White v. Mann, 26 Me. 361 (1846), the Court recognized that no fixed period of absence is required to establish death. The seven-year period when such a presumption will arise,

" . . . may be greatly abridged by proof, that the person has encountered

7. See: *Feely v. Norton, 149 Me. 119, 124, 125, 99 A.2d 285, 288, 289 (1953).*

8. *Plaintiff's action against the Company is based upon the wrongful death statutes.* 18 M.R.S.A. § 2551 et seq.

such perils as might be reasonably expected to destroy life, and has been so situated, that according to the ordinary course of human events he must have been heard of, if he had survived." 26 Me. at 370.

▮ The jury heard unrebutted testimony that Russell Kaler was devoted to his family. Such a man would, in the ordinary course of events be "heard of," if he had survived. The circumstances of Russell Kaler's disappearance, plunging in a car into 200 feet of icy December water, makes death a most reasonable conclusion.

Plaintiff and the Company are in agreement that the general rule applicable in this case is that an owner or occupant of premises adjacent to a highway, upon which has been created a condition of such character that a danger to those lawfully using the highway may be foreseen, is under a duty to exercise reasonable care, by means of guards or barriers, to prevent such harm. De Ark v. Nashville Stone Setting Corp., 38 Tenn.App. 678, 279 S.W. 2d 518 (1955).

The Company attempts to distinguish the instant case by emphasizing the distance of the quarry from the highway. In the Company's view the rule applies only when the hazard is contiguous to the highway such as the hazard in Mile High Fence Co. v. Radovich, 489 P.2d 308 (Colo.1971) (7 inches from pathway).

▮ The duty, hence the liability, of an owner or occupier of land depends upon the danger inherent in a hazard, not upon its precise location. Distance is but one of the elements which the jury must consider. City of Norwich v. Breed, 30 Conn. 535, 544 (1862).

▮ In determining whether a hazard is in such close proximity to a highway as to place a duty upon the owner or occupier of the premises to take measure to protect the traveling public, the jury must consider the highway as traveled and used by the public rather than as located. Barnes v. Inhabitants of Chicopee, 138 Mass. 67, 69 (1884).

The Company also contends that, under the general rule, it was not foreseeable that one in lawful use of the highway would come in contact with the hazard presented by the quarry. However, as we have already pointed out, common experience reveals that numerous causes, both inadvertent and intentional, of deviations from the traveled portion of a highway are foreseeable.

▮ Given the circumstances of the accident site, i. e., the ground slopes downward to the brink of the quarry a mere eight feet from the pavement, we think the jury would be warranted in concluding that it was foreseeable that one in lawful use of the highway would come within the zone of danger to life and limb posed by the quarry.

▮ The Company argues that the further circumstance, that of the guardrail maintained by the City, should also be taken into consideration in determining the question of foreseeability. The quardrail would render the type of accident here before us unforeseeable only if it were sufficient to prevent an automobile which was being driven in a manner reasonably foreseeable, from leaving Old County Road on the easterly side. We have already decided that the issue of the guardrail's sufficiency should have been presented to the jury. Consequently, the fact that a guardrail existed at the site, does not authorize a directed verdict on behalf of the Company on the issue of foreseeability.

Although the circumstances would allow a jury to find that the Company had a duty to protect travelers from the danger posed by the quarry, the Company argues that there was no breach of the duty.

The duty of the Company is based upon negligence and is to be distinguished from

the duty imposed upon the City of Rockland by 23 M.R.S.A. § 3655.[9]

The Company contends that plaintiff has produced no evidence tending to show that, in the exercise of reasonable care, the Company could have created a barrier offering more protection than did the existing railing. Plaintiff in her complaint and at trial, suggested an earth berm as a protective device.

Could the jury, from the proffered evidence, determine whether such a berm was feasible and whether it would offer greater protection to motorists?

We think not.

The evidence revealed that only eight feet separated the pavement from the quarry, and that the ground sloped downwards. The type of berm that could be constructed in this limited space is not a matter of common knowledge. A witness versed in engineering would be required to describe the type of berm, if any, that could be constructed and, with regard to the height and grade of such berm, the amount of protection that it would provide travelers.

■ However, common experience reveals that railings other than the type in place on Old County Road were in use in Maine prior to the date of Russell Kaler's death. Steel posts rather than cable, or concrete retaining walls were in common use. The jury could have found that the gravity of danger posed by the quarry was equivalent to that faced by a traveler when crossing a bridge. The jury could have found that railings more substantial than the wood and cable type were in use, and thus feasible, and should have been employed along the quarry as the reasonable safeguards which the Company was bound to provide.

The Company next argues that the duty to protect the travelers is wholly upon the City since Old County Road was consciously constructed along an existing quarry. If such was the case, the majority of decided cases supports the Company's position. Fisher v. Prowse, 2 Best & Smith 770, 121 Eng.Rep. 1258 (1862); Galiano v. Pacific Gas & Electric Co., 20 Cal.App.2d 534, 67 P.2d 388 (1937); Restatement (Second) of Torts § 368, comment c at 269 (1965). But see, White v. Suncook Mills, 91 N.H. 92, 13 A.2d 729 (1840).

But even were we to accept the majority rule, no evidence admitted at trial tends to prove that the quarry pre-existed Old County Road.

■ Is it the plaintiff's burden to prove that the dangerous condition was created by the Company after the Old County Road came into existence? Or, is it the burden of the defendant occupier or owner of land to prove as a defense to an otherwise existing duty to travelers that the road came into existence after the quarry?

We believe the latter is true.

■ The plaintiff need prove only the existence of a duty toward a class of which he is a member; a breach of that duty and that the breach was a proximate cause of his loss. As was explained in Fisher v. Prowse, supra, a plea that the dangerous condition pre-existed the highway is a plea in avoidance to be made by the defendant.

In Sawicki v. Connecticut Ry. & Lighting Co., 129 Conn. 626, 30 A.2d 556 (1943), the claim of an occupier of land that the municipality was responsible for protecting travelers, was also advanced as a defense.

The burden of proof on such a plea would rest with the defendant. Therefore, a failure of proof on this issue in the instant case operates to the defendant Company's detriment, not to the detriment of

---

9. The Company "must use reasonable care to keep their premises abutting the highway in such a condition as not to endanger travelers in their lawful use of the highway." Beckwith v. Somerset Theaters, 139 Me. 65, 68, 27 A.2d 596, 598 (1942).

the plaintiff. A directed verdict for the defendant could not properly be predicated upon the fact it was not affirmatively established the road pre-existed the quarry.

■ The Company's contention that the negligence of the plaintiff's deceased was *the legal* cause of the accident is also without merit. The reasons given for overturning the directed verdict for the City are applicable. The decision of whether or not the Company's failure to act was a proximate cause of Russell Kaler's death was for the jury.

■ Against the Company, Russell Kaler is also entitled to the statutory presumption of due care. 14 M.R.S.A. § 160.

■ We have ruled that plaintiff's evidence does not, as a matter of law, indicate that Russell Kaler was negligent. The burden of proving such negligence is upon the Company, not upon the plaintiff, and uncertainties in the evidence must be viewed in a light most favorable to plaintiff.

The action of the presiding Justice in directing a verdict for the defendants cannot be sustained as to either defendant.

The entry must be,

Appeals sustained.

New trial ordered.

All Justices concurring.

WEBBER, J., sat at argument but retired before this opinion was adopted.