## FT. WAYNE COOPERAGE COMPANY *v.* PAGE.

[No. 21,156. Filed April 3, 1908. Rehearing denied June 13, 1908.]

1. TORTS.—*Wrongful Operation of Lawful Business.—Damages.*— The operation of a lawful business at an improper place, or in an improper manner, may give rise to an action for damages. p. 589.

2. SAME.—*Operation of Factory Near Highway.—Nuisance.*—The operation of a factory having a waste pipe six feet from the ground and eight feet from the highway, from which pipe steam escapes and at times floats over and across the highway, does not, of itself, constitute negligence, and is not, of itself, a nuisance. p. 590.

3. PLEADING.—*Complaint.—Negligence.—Operating Factory Near Highway.*—A complaint alleging that defendant company operated a stave factory near a highway; that such factory was provided with an escape pipe standing six feet from the ground and eight feet from such highway; that defendant knowingly discharged steam therefrom with a loud, puffing noise, which steam floated over such highway in front of plaintiff's horse, causing the horse to injure plaintiff, states a cause of action. p. 591.

4. TRIAL.—*Negligence.—Ordinary Care.—Question for Jury.*— Whether a company operating a stave factory near a public highway used ordinary care in preventing the escape of steam upon such highway is a question for the jury. p. 592.

5. PLEADING.—*Complaint.—Facts.—Conclusions.*—Where the facts, showing that defendant violated a duty owing to the plaintiff, to plaintiff's injury, are set forth in a complaint, characterizing defendant's factory as a public nuisance adds nothing thereto. p. 592.

6. SAME.—*Complaint.—Negligence.—Public Highways.—How Alleged.*—Allegations that an escape pipe was maintained by defendant "within eight feet of the public highway"; that the steam from such pipe would "float in clouds across the highway"; that plaintiff was driving upon "said highway"; that because of such steam plaintiff's horse "broke away to the side of the road," causing injuries to plaintiff, sufficiently shows that the way was a public highway. p. 592.

7. TRIAL.—*Interrogatories to Jury.—General Verdict.—Negligence.* —Answers to interrogatories to the jury showing that defendant operated a factory having an escape pipe within eight feet of a public highway; that plaintiff knew thereof, and that while driving along near such pipe the steam therefrom escaped and floated across such road, scaring plaintiff's horse and causing in-

juries to plaintiff, are not irreconcilable with a general verdict for plaintiff. p. 592.

8. TRIAL.—*Interrogatories to Jury.—General Verdict.*—In order to overcome a general verdict for plaintiff in a negligence case, the answers to the interrogatories to the jury must disclose a fact or facts wholly inconsistent with defendant's negligence, or conclusive of plaintiff's contributory negligence. p. 593.

9. SAME.—*Interrogatories to Jury.—Facts to be Elicited.*—Only such facts as are material to the issues may be elicited in the interrogatories to the jury. p. 593.

10. SAME.—*Interrogatories to Jury.—Contributory Negligence.*—In an action for damages alleged to be caused by defendant's operation of an escape pipe which frightened plaintiff's horse, an interrogatory, in substance, did the plaintiff's companion in the buggy say to the plaintiff "You had better let me help you hold him" was immaterial, whatever the answer might have been. p. 593.

11. SAME.—*Interrogatories to Jury.—Uncertainty.—Contributory Negligence.*—In an action for damages caused by defendant's discharge of steam from an escape pipe near the public highway, to an interrogatory asking if such steam was escaping onto and across the highway when plaintiff arrived at a certain point near by, the answer "At the side of the highway. At times it blew across," is not indefinite, where the evidence showed such answer to be true. p. 594.

12. SAME.—*Interrogatories to Jury.—Evidence.*—In an action for damages caused by the fright of plaintiff's horse because of the escape of steam from defendant's factory, an interrogatory asking whether it was reasonably probable that a colt of ordinary gentleness would become frightened when first brought into proximity with a steam engine in operation, is not material, since any answer thereto would not be controlling. p. 594.

From Miami Circuit Court; *Joseph N. Tillett*, Judge.

Action by Charles Page against the Ft. Wayne Cooperage Company. From a judgment for plaintiff for $6,500, defendant appeals. Appealed from the Appellate Court under §1394 Burns 1908, cl. 3, Acts 1901, p. 565, §10. *Affirmed.*

*Vesey & Vesey, Loveland & Loveland* and *Barrett & Morris,* for appellant.

*John S. Branyan, Milo .Feightner, Lesh & Lesh* and *Bailey & Cole,* for appellee.

HADLEY, J.—About one mile east of the town of Roanoke, at the south side of a public highway running east and west, and about two hundred feet east of a point where the Wabash railroad, running north and south, crosses said highway, appellant, in August, 1904, maintained a stave and heading factory, operated by steam-power. As a part of its plant, and as constituting the eastern structure thereof, was a steaming-house, sixty-seven feet long, ten feet high, and ten feet wide, parallel with and nine feet south of the highway, in which house were located nine vats for the steaming of the timber preparatory to its being manufactured. The power- and machinery house was located a few feet west and south of the steaming-house. The vats were supplied from the waste steam of the engine, which was conveyed from the latter by a four-inch, iron pipe laid on the ground, parallel with and within a foot of the north line of the steaming-house, to the northeast corner of said house, at which point it terminated in an upright stem, seven inches in diameter, standing six feet above the ground, and within eight feet of the public highway, from the top of which stem the exhaust steam from the pipe escaped at all times when not being used for the filling of the steam vats. The escape of the steam was in large volumes, and was attended with a loud, puffing noise, and when the wind was in a southerly direction the steam would float in clouds across the highway, frequently totally obstructing vision along the road. In August, 1904, appellee, having in the buggy with him one Druley, was driving eastward on said highway by said heading factory. The horse was three and one-half years old, ordinarily gentle, and well broke for driving on the public highways, though he had not been driven in the presence of engines or by the heading factory before. After crossing the railroad he trotted along at the rate of seven miles an hour. When he arrived opposite the west end of the mill he became somewhat frightened by the

noise of the saws and other machinery, shied to the north side of the road, but was pulled back into the road and urged along, and when he had gone twenty-five or thirty feet farther east a cloud of steam suddenly burst from the top of said stem and floated across the road. At this the horse instantly became frightened and unmanageable, and broke away to the side of the road, inflicting severe injuries upon appellee.

In addition to the foregoing facts it is alleged in the first paragraph of the complaint that said clouds of escaping steam and said great noise were calculated to frighten horses of ordinary gentleness driven by persons along the highway, which fact was well known to the defendant; that the defendant wrongfully, unlawfully, and negilgently maintained said steaming-house and steam-pipe ''at the place and in the manner before set forth.'' It is further alleged in this paragraph that the plaintiff was driving a quiet and gentle horse along the highway, and driving in a careful and prudent manner, and without knowing of or apprehending any danger, and when within thirty feet of said upright steam-pipe, a large cloud of steam suddenly burst forth from said pipe, with a loud and frightful noise, and floated over the highway immediately in front of the plaintiff's horse, whereby said horse became frightened and beyond the plaintiff's control.

In addition to the facts averred in the first paragraph, it is alleged in the second paragraph that ''when thirty feet west of said steam-pipe a great quantity of steam was, by the defendant, suddenly, carelessly and negligently emitted from said pipe, with a puffing sound, and formed a dense cloud of steam which was carried over said highway by the wind immediately in front of the plaintiff's horse, which caused the horse to take fright.'' It is averred in this paragraph that the facts alleged constitute a public nuisance.

The first paragraph seems to be based on the negligent construction and maintenance of the steam-pipe adjacent to

the public highway, and the second, on the theory that the construction, maintenance and operation of the steam-pipe, in the position and manner set forth, constituted a public nuisance from which the plaintiff had suffered special damages. The two theories being ruled, in the main, by the same general principles, we have deemed it proper to consider the paragraphs together.

The chief objection presented is that there is no averment that either the location or manner of operation of the upright steam-pipe constituted a nuisance, and no averments from which a nuisance can be inferred. This position is not maintainable.

It is true that the business described is a proper and lawful business, and, being located on appellant's own premises, its operation cannot be a source of damages to a 1. traveler on the highway, unless it is shown that the structures or business, or some part of one or the other, was being maintained in an improper place, or conducted in an improper manner. One may not always conduct a lawful business on his own premises as he pleases. The law requires that every one in the use and enjoyment of his property shall have regard for the rights of others, and will not allow him to set up or prosecute a business on his own land in a way that is calculated to, or in fact does, materially or injuriously affect the rights of adjoining owners, or that substantially or harmfully interferes with or injures those rightfully traveling on an adjoining highway. *Wright* v. *Compton* (1876), 53 Ind. 337; *Island Coal Co.* v. *Clemmitt* (1897), 19 Ind. App. 21.

In *Wright* v. *Compton, supra,* appellant was engaged in quarrying stone near the highway by the use of gunpowder. Compton, in passing by on the highway at the time a blast was exploded, was hit by flying rock and injured. In upholding Compton's recovery of damages this court said: "Every person must so use his property and exercise his rights as not to injure the property or restrict the rights of

others. In this case the defendants could not lawfully so use their stone-quarry as to embarrass the rights of travelers along the public highway. The public travel must not be endangered to accommodate the private rights of an individual.''

The principle here involved is also well illustrated by the facts and ruling in *Island Coal Co.* v. *Clemmitt, supra.* In that case the company, in disposing of the slack and refuse from its mine, piled the same on its own premises, but adjoining a highway. The refuse took fire by spontaneous combustion, and, burning, slid down the heap and frightened the plaintiff's horse. In commenting upon the facts as constituting a cause of action for damages the court said: ''The entire pleading shows that the appellant was negligent in producing a condition of things through which as a natural result the appellee suffered the injury charged. If the appellant's wrong which caused the particular injury which forms the basis of the action may not be called, strictly speaking, the maintenance of a nuisance, and if the cause of action should more properly be said to be based upon negligence, we think that, though the meaning is not made as clear as desirable, it is sufficiently shown that there was a want of due care for the safety of persons rightfully using the highway, and a negligent exposure of such persons to peril from the cause through which the appellee was injured.''

To erect and maintain a pipe seven inches in diameter, in an upright position, standing six feet from the ground, out and apart from the building, and within eight feet of a public highway, from the top of which to discharge a large volume of waste steam, with a loud puffing noise, to be wafted across the highway on about the level of the heads of passing horses, is an unusual and indiscreet construction and operation of the pipe, to say the least of it; especially when it is obvious that if the waste had been placed on the south side of the building its escape

would not only have been unobserved from the road, but its floating over the same on so low a level would have been effectually prevented.

But it cannot be said that the construction or operation of the pipe in the particular place and manner alleged was necessarily, of itself, either a nuisance or negligence. If appellant had kept a watch over the highway, and on the approach of driven animals had stopped the operation of the mill until the danger of their taking fright had been passed, or if it had adopted any other means by which all appreciable danger of giving fright from escaping steam had passed, then there would appear no just or sufficient reason for disturbing appellant in the exercise and enjoyment of its property rights. In other words, it is not a nuisance to operate a stave factory and discharge waste steam in close proximity to a public highway if done in such a careful manner that it will not interfere with travelers in the free and safe exercise of their rights to travel the highway. The law will not intervene if the operator so conducts his factory as to avoid the creation of new dangers or difficulties to travelers on the road. *Wabash, etc., R. Co.* v. *Farver* (1887), 111 Ind. 195, 198, 60 Am. Rep. 696; *Louisville, etc., R. Co.* v. *Schmidt* (1897), 147 Ind. 638, 648.

Now let us apply these principles to the facts of this case. It is alleged that appellant knew that the discharge of the steam in the place and manner described was calculated to frighten horses of ordinary gentleness; that while carefully driving a gentle horse along the highway, when the horse had arrived at a point twenty-five or thirty feet from the waste pipe, the defendant suddenly let the steam go with a loud, puffing noise, which steam formed a great cloud and floated across the road in front of the horse, causing him to take fright and inflict serious injury upon the plaintiff. These averments show that appellant operated on its own premises a structure which, from location, or the manner in which it was conducted, imparted a

new danger to those rightfully using the highway, and whether appellant at the time of appellee's accident was operating its factory with a degree of care for the safety of travelers commensurate with the danger it had created in the highway was a question very properly submitted to the jury. It would not have strengthened the complaint in terms to characterize the location or conduct of the factory as a public nuisance. It was sufficient for the plaintiff to show that he was injured by appellant's omission of a duty owing to him, namely, to protect him against injury from a peril the company had erected by the roadside in the prosecution of its own private business. We think it sufficiently appears that the highway was a public highway, and that each paragraph of the complaint states a cause of action.

It was not error to overrule appellant's motion for judgment in its favor on the answers to interrogatories notwithstanding the general verdict.

The answers referred to concerning the location and operation of appellant's factory establish the facts substantially as set forth in the introductory part of this opinion. Further, it is shown that appellee knew the location of the steam-pipe, that steam at the time was floating across the highway, and that when at a point 110 feet west of the pipe the pipe was in plain view of appellee from the center of the highway, and from that point he could have seen steam floating across the highway if there was, at that time, any steam so floating. The horse did not become uneasy and nervous in approaching appellant's factory after crossing the railroad track, and appellee did not see any steam from the waste pipe floating across the highway after he crossed the railroad and before his horse shied at the sawmill. Both appellant and appellee at the time knew that such a horse as was being driven by appellee was likely to take fright at steam floating across the highway so near the ground.

In the large number of answers there is no fact found that is inconsistent with the general verdict that necessarily finds the existence of negligence on the part of appellant, and the nonexistence of contributory negligence on the part of appellee. The facts found, strengthened by the presumptions that may be invoked in support of the general verdict, very clearly bring the case within the oft repeated rule of this court as defined in *City of Jefferson-ville* v. *Gray* (1905), 165 Ind. 26, 29, and cases cited.

In support of its motion for a new trial appellant insists that the court erred in overruling its motion to require the jury to return more definite and certain answers to divers interrogatories. Under the statute (§572 Burns 1908, Acts 1897, p. 128) it is made the duty of the court, upon the request of either party, to instruct the jurors to find specially upon any particular question of fact stated to them in an interrogatory on any issue in the case. The facts that must be found are such facts as are material to some issue in the case.

The first answer assailed as too indefinite was to the following interrogatory: "(50) Did said Druley, while on or approaching said crossing, say to the plaintiff, in substance: 'You had better let me help you hold him?' A. Not definite." The court doubtless took the view that the question and answer were immaterial because, if answered positively, and either affirmatively or negatively, the answer would not have affected the general verdict. Druley was riding in the buggy with the plaintiff when the horse took fright. If he did offer to assist in holding the horse, a rejection of the proffered assistance might, under the circumstances shown, have been counted as due care on the part of the plaintiff. It is clear that no answer that might have been returned would have changed the result. *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398. Besides, the interrogatory called for a mere item of evidence,

and not for a material fact, and should have been rejected. *Louisville, etc., R. Co.* v. *Hubbard* (1888), 116 Ind. 193; *Gates* v. *Scott* (1890), 123 Ind. 459.

The answers to interrogatories sixty-two and sixty-six come within the same rule.

Fifty-nine reads as follows: "Was the steam discharging from the mill onto and across the highway while the plaintiff was approaching from a point west of the railroad? A. At the side of the highway. At times it blew across." The evidence showed that the steam being discharged at a point eight feet from the side of the highway responded to the shifting of the wind, and in one instance was carried across the road, and in the next, in another direction. It is not perceived how the jury, under the evidence, could have answered the interrogatory differently, and yet accurately. The court did not err in overruling the motion. *Cincinnati, etc., R. Co.* v. *Cregor* (1898), 150 Ind. 625. Interrogatory sixty-three was as follows: "Was there something in the actions of the horse, while on or approaching the railroad tracks, that would indicate to an ordinarily prudent person that said horse was nervous and excited at the time? A. I think not." Ninety-eight and one-half falls within the same rule. If the most favorable answer possible for appellant had been returned to these interrogatories they would not control the general verdict, and the court did not err in overruling appellant's motion.

The refusal of the court to submit to the jury certain interrogatories is complained of. Interrogatory forty-one reads thus: "Was it reasonably probable that a colt of ordinary gentleness, three and one-half years old, which had never been driven near a steam-engine, would become frightened when brought for the first time into proximity with a steam-engine in operation." This called for evidence and not a material fact, and was properly refused. The same is true of interrogatories sixty-four and

seventy-six. Ninety-five inquired if an ordinarily prudent man would have known that such a horse, three and one-half years old, would be likely to become frightened when passing defendant's factory as it was being operated on that day. This might have been answered either way and be entirely consistent with the general verdict. The same is true of ninety-six, ninety-seven and ninety-eight, and they were all rightly withheld from the jury.

There was sufficient evidence to warrant the jury in finding established the negligence averred in the complaint.

We find no error. Judgment affirmed.