**INDIANA LIMESTONE COMPANY, Appellant–Defendant,**

v.

**John STAGGS, Administrator of the Estate of Shelley D. Staggs, Deceased, Appellee–Plaintiff.**

No. 47A05–9406–CV–250.

Court of Appeals of Indiana.

Nov. 21, 1996.

Richard J. Liptak, Douglas A. Hoffman, Miller Carson Boxberger & Murphy, Bloomington, for Appellant–Defendant.

Betsy K. Greene, Nunn Kelley & Greene, Bloomington, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Indiana Limestone Company ("Indiana Limestone") brings an interlocutory appeal from the trial court's denial of its motion for summary judgment in a wrongful death action brought by John Staggs ("Staggs"), as administrator of the estate of Shelly D. Staggs ("decedent"). The sole issue is whether the trial court properly denied Indiana Limestone's motion for summary judgment.

We reverse in part and affirm in part.

### ISSUES

The parties raise two issues, which we restate as:

1. Whether the owner of a water-filled limestone quarry located 25 feet from a sharply curving two lane road owes a duty of care to a driver who drowns after her car leaves the road and enters the quarry.

2. Whether a quarry so located is a public nuisance due to the risk of harm it poses to travelers on the adjacent road.

### FACTS

The facts most favorable to Staggs, the nonmoving party, are as follows. On the morning of February 23, 1992, the decedent drove her car south on Rockport Road. The road is on a downhill grade and it curves sharply to the left around the University Quarry, which is owned by Indiana Limestone. On that date, there were icy spots in both lanes of Rockport Road near the quarry. At this point, the decedent lost control of her car and veered towards the inside of the curve. Her car crossed the center line of the road and traveled forty-two feet on the opposing lane. The decedent's car then left the roadway and traveled another 156 feet across brush and other foliage before striking an embankment at the corner of the quarry. Thereafter, her car fell thirty feet into the quarry and submerged twenty-five feet under water. The decedent's car was wedged between rocks at the bottom of the quarry rendering a rescue attempt impossible.

Prior to February 23, 1993, there were no accidents involving University Quarry, and the last accident involving any quarry in this area was over fifteen years ago. The northbound lane of South Rockport Road is twenty-four feet and three inches away from the ledge where the decedent's car fell into the quarry.

On March 1, 1993, Staggs filed a complaint for wrongful death against Indiana Limestone. Staggs alleged Indiana Limestone was liable for decedent's death because Indiana Limestone was negligent in maintaining its property. Staggs also alleged that University Quarry was a nuisance. In its answer, Indiana Limestone denied both of Staggs's claims.

On August 3, 1993, Indiana Limestone filed a motion for summary judgment. Indiana Limestone argued it was not negligent in maintaining its property because it did not owe the decedent a legal duty. Further, Indiana Limestone argued that Staggs could not recover under a nuisance theory. On May 5, 1994, the trial court denied summary judgment.

### DISCUSSION

### STANDARD OF REVIEW

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986). We may consider only those portions of the pleadings,

depositions, answers of interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993); Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the non-moving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App. 1991).

Indiana Limestone contends that the trial court's denial of summary judgment was improper because there are no genuine issues of material fact. In his complaint, Staggs set forth his claims against Indiana Limestone as follows:

4. That the defendant, Indiana Limestone Company, was negligent with regard to its maintenance of its property and such negligence was a proximate cause of the accident and the death of Shelly D. Staggs and the resultant damages.

5. That the defendant Indiana Limestone Company's unprotected water-filled abandoned quarry hole located immediately next to a winding road constitutes a nuisance and was a proximate cause of the accident and the death of Shelly D. Staggs and the resultant damages.

(R. 5). Indiana Limestone argues it is entitled to judgment as a matter of law on both of Staggs's claims.

### DUTY

First, Indiana Limestone argues that it is entitled to judgment as a matter of law on Staggs's negligence claim because Indiana Limestone did not owe the decedent a legal duty. We disagree.

■ At the outset, we recognize that summary judgment is generally inappropri-ate for negligence cases. *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151, 152 (Ind.Ct.App. 1992). Issues of negligence, contributory negligence, causation, and reasonable care are more appropriately left for the determination by a trier of fact. *Houin v. Burger*, 590 N.E.2d 593, 596 (Ind.Ct.App.1992). Whether a duty of care exists, however, is a question of law to be decided by the trial court. *Id.*

■ For Indiana Limestone to prevail on appeal, it must demonstrate that no factual dispute exists with respect to at least one element of negligence and that it is entitled to judgment as a matter of law. *See* T.R. 56(C). The elements of negligence are: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to that standard; and (3) an injury proximately caused by the breach of duty. *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind.1994). Absent a duty owed to a plaintiff by the defendant, there can be no actionable negligence. *Lewis v. City of Indianapolis*, 554 N.E.2d 13, 16 (Ind. Ct.App.1990), *trans. denied.*

To succeed in his negligence claim, Staggs must demonstrate that Indiana Limestone owed the decedent a legal duty. Staggs does not contend that a statutory duty was owed, but asserts that a common law duty existed.

Indiana Limestone contends it did not owe the decedent a common law duty under the facts of this case. The Indiana Supreme Court has set forth three factors that must be analyzed and balanced when determining whether to impose a common law duty: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991), *reh'g denied.* We examine each of these factors in turn.

A. Relationship Between the Parties

■ While the determination of whether a relationship gives rise to a duty is generally a matter for the court to decide, "factual questions may be interwoven with the determination of the existence of a relation, rendering

the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder." *Harper v. Guarantee Auto Stores,* 533 N.E.2d 1258, 1261–62 (Ind.Ct. App.1989), *trans. denied.*

■ The public right of passage in a road carries with it the obligation upon occupiers of adjacent land to use reasonable care not to endanger such passage by excavations or other hazards so close to the road as to make it unsafe to persons using the road with ordinary care. *DeArk v. Nashville Stone Setting Corp.,* 38 Tenn.App. 678, 279 S.W.2d 518, 521 (1955), *cert. denied.* Our supreme court has long recognized a relationship between owners or occupiers of land adjacent to a highway and persons rightfully using the highway. *See. e.g., City of Indianapolis v. Emmelman,* 108 Ind. 530, 534, 9 N.E. 155, 157 (1886). There, the court stated:

> "[w]hoever while passing along, or when properly in a public street, suffers an injury, while exercising the degree of care which the law requires of such person, by falling into an excavation which has been made in *or near* such street, is entitled to maintain an action for such injury against the person making the excavation. In such a case the person making the excavation comes under an obligation to make it safe in respect to all persons who have a right to use the street."

*Id.* at 534–535, 9 N.E. at 157 (emphasis supplied). *See also Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248 (Ind.1996), where our supreme court noted that "risk imports relation; it is risk to another or to *others within the range of apprehension*", quoting *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928) (emphasis supplied in *Tibbs* ). There, the court discussed its precedent case law recognizing the duty owed by one in possession of a premises to passersby to keep adjoining areas reasonably clear of risks. *Id.* at 250.

The *Emmelman* rule is in accord with the Restatement (Second) of Torts § 368 (1965), which states:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that

it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

> (a) are traveling on the highway, or

> (b) foreseeably deviate from it in the ordinary course of travel.

*And see generally* G.L. Clark, Annotation, *Injury to One Deviating From Highway,* 159 A.L.R. 136 (1945), and 39 Am.Jur.2d *Highways, Streets and Bridges* § 530 (1968), stating the "general rule" that:

> "an owner of property adjoining a public highway who makes an excavation on his property near the highway ... without taking reasonable precautions to guard against the danger thus created ... may be held liable to a traveler, himself in the exercise of due care, who is injured ... when he deviates from the highway unintentionally or from some necessity."

So, under the *Emmelman* and Restatement rules, the risk posed by an excavation on property adjacent to a public way might, in some situations, create a relation sufficient to give rise to a tort duty to guard against foreseeable injuries to persons exercising due care. Indiana Limestone had a common law relationship with the decedent if she was traveling with reasonable care, if she had a right to be on the road, and if users of the road were within the "range of apprehension" of the risk posed by the quarry (that is to say, if the decedent's deviation from the highway was "reasonably foreseeable.")

Indiana Limestone contends that it had no relationship with the decedent, relying on *Northern Indiana Public Service Co. v. Sell,* 597 N.E.2d 329 (Ind.Ct.App.1992), *trans. denied.* In *Sell,* a motorist fell asleep and lost control of his car. The car crossed the center line and the opposing lane of traffic, then went down a steep embankment and crashed into a utility pole located thirteen feet from the road. *Id.* at 330–31. The plaintiff, a passenger in the car, sued the utility company for injuries resulting from the accident. *Id.* at 330.

The *Sell* reasoning is not helpful to our analysis. In determining that the Northern Indiana Public Service Co. (NIPSCO) had no relationship with the plaintiff, the *Sell* court relied on the right of utility companies, under the statute in effect at the time of the accident, to place its poles along state roads so long as the placement of the poles does not "incommode" the public in the use of the roads, Ind.Code 8–20–1–28 (1982). The *Sell* court determined that the "statutory relationship" between utility companies and users of public highways was limited to members of the public "using the state highways as they were intended to be used," *id.* at 332. Once the car in which [plaintiff] was a passenger crossed the center line and opposing lane of traffic, the use was no longer legitimate, *see* Ind.Code 9–21–8–2 (1993) (vehicles required to be driven on the right half of the roadway), so the court found no relationship between NIPSCO and Sell. *Id.* Because the *Sell* decision did not address the common law relationship between users of a public way and adjacent landowners recognized in *Emmelman* and the Restatement, it does not control.

■ Because there remain genuine issues of material fact regarding, for example, whether the decedent was exercising the required degree of care in her use of the road at the time of the accident, summary judgment is inappropriate on the threshold question of whether the parties had a relationship that could give rise to a tort duty.

## B. Foreseeability

■ In analyzing the foreseeability factor of duty, we focus on whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. *Webb,* 575 N.E.2d at 997. Such foreseeability does not mean that the precise hazard or exact consequences should have been foreseen, but neither does it encompass anything which might occur. *Crull v. Platt,* 471 N.E.2d 1211, 1215 (Ind.Ct.App.1984), *reh'g denied, trans. denied.*

Indiana Limestone argues it was unforeseeable that the decedent would lose control of her car and crash into its quarry. Indiana Limestone again relies on *Sell* as authority. The *Sell* court stated:

> In locating and installing the utility pole NIPSCO was required to anticipate the ordinary use of the highway.... NIPSCO was not required to anticipate that [the driver] would fall asleep, thereby losing control of his vehicle, enabling it to cross the center line and opposing lane of traffic, proceed another thirteen feet down an embankment, striking a pole.

*Sell,* 597 N.E.2d at 332. The court also noted that there were no prior accidents at that location. *Id.* at 333. The court distinguished decisions which found collisions with utility poles to be foreseeable when the poles or guy wires encroached on a street or sidewalk, were located in a median just a few feet away from the pavement, or were immediately adjacent to the street on a sharp curve. It noted that the pole where Sell was injured was in alignment with other poles located along the same stretch of road, was located 30 feet from the center line of the highway, and that the road in the vicinity of the accident had no difficult curves to be negotiated by a motorist, and concluded:

> Although in some cases it would be reasonably foreseeable that motorists (or their occupants) would leave the traveled portion of a road and strike a utility pole, there are no facts in the present case susceptible of that inference. Therefore, the factor of foreseeability also militates against imposing a duty on NIPSCO.

*Id.* at 334.

■ Staggs has presented ample facts to support the inference that it was foreseeable that the decedent's car might leave the road and enter the quarry. *Sell* is distinguishable on its facts and does not support summary judgment for Indiana Limestone. We first note that in the cases involving collisions with utility poles, courts typically emphasize the distance of the plaintiff's deviation from the highway and the proximity of the pole to the road. But in cases involving hazards other than utility poles, the foreseeability of the deviation itself, rather than distance, is stressed. *See Weiss v. Holman,* 58 Wis.2d 608, 207 N.W.2d 660, 669 (1973). *See also*

*Hayes v. Malkan*, 26 N.Y.2d 295, 310 N.Y.S.2d 281, 282–285, 258 N.E.2d 695, 696–697 (1970) (distinguishing excavations, which are analogized to hidden "traps" on private land, from utility poles and other "visible, sizeable, above-the-surface structure[s]"). While the distance of a quarry from the road is an element a fact-finder must consider, the duty of an owner or occupant of land upon which a quarry is located depends on the danger inherent in the hazard, and not upon its precise location. *Thorbjohnson v. Rockland–Rockport Lime Co.*, 309 A.2d 240, 253 (Me.1973). *See also Louisville & Nashville R.R. Co. v. Anderson*, 39 F.2d 403, 405 (5th Cir.1930) (recognizing that the degree of danger, rather than arbitrary distance, is the test of duty, and noting that a landowner might reasonably anticipate danger to drivers of automobiles that could not have been anticipated to pedestrians or horse-drawn vehicles involved in earlier cases.)

■ The foreseeability of a deviation from the roadway depends not upon whether the deviation is intentional or inadvertent, but whether the deviation is a normal incident of travel—that is, whether the *condition of the roadway* is such that a vehicle is likely to deviate from it in the ordinary course of travel and come in contact with the excavation. *Kavanaugh v. Midwest Club, Inc.*, 164 Ill.App.3d 213, 115 Ill.Dec. 245, 249, 517 N.E.2d 656, 660 (1987); Restatement (Second) of Torts § 368 comment g (1965). In *Kavanaugh*, the court found a deviation was not foreseeable when a driver had an epileptic seizure and ran off the road into a pond, because there was no allegation of any "condition peculiar to the roadway." *Id.* More specifically, the court noted that "[t]here are no allegations, for example, that the pond *was located near a sharp curve* in the roadway ... which might make it more likely that the vehicle would deviate from the roadway in the ordinary course of travel and come into contact with the pond." *Id.* (Emphasis supplied). *See also Thorbjohnson*, 309 A.2d at 246, where the court determined a deviation off the roadway and into a quarry was foreseeable, even though "the highway itself presented little danger of causing deviations from the highway *as it would if it contained sharp curves or if it were not level.*" (Emphasis supplied). The *Thorbjohnson* court also noted case law holding that one who skidded off a road due to ice and snow was considered in reasonably foreseeable use of the highway.

The decedent was southbound on Rockport Road when her car ran off the road and plunged into the quarry. On that day, there were icy spots in both lanes of the road. The road is on a downhill incline in the southbound lane, and the quarry is located to the left of a sharp curve to the left. The quarry's edge is 25 feet from the road. Staggs presented evidence that 30 feet is the minimum distance traffic experts consider necessary for recovery of control when a car leaves the road for any reason. The condition of the roadway at the site of the decedent's accident—a sharp curve, a downhill incline, and patches of ice—supports a finding that the decedent's deviation from the roadway was not, as a matter of law, unforeseeable.

There are numerous other examples of instances where deviation from a road is a "normal incident of travel," and thus foreseeable, even when the road is straight and level. *See Thorbjohnson*, 309 A.2d at 246 (noting reasonably foreseeable deviations resulting from mechanical problems, ice, intentional deviations to avoid an obstruction or collision, or the driver's sudden physical disability.) In *Thorbjohnson*, the court overturned a directed verdict for the defendant, finding a driver's deviation from the roadway was not unforeseeable as a matter of law when a car traveling down a straight and level road left the paved portion of the road, proceeded about 53 feet along the edge of the road, hit a mailbox four feet off the road, continued for 23 more feet, hit a utility pole, returned to the paved portion of the road, skidded along and across the road for 32 feet, left the road on the other side, knocked down six guardrail posts, skidded 130 feet along the grassy area behind the guardrails, then plunged into a water-filled quarry whose edge was eight feet eight inches off the paved part of the road.

Given the circumstances at the decedent's accident site, we cannot say that as a matter

of law it was unforeseeable that one in lawful use of the highway would come within the zone of danger posed by the quarry.

### C. Public Policy

Public policy concerns also weigh in favor of finding a duty.

Indiana Limestone again refers us to the *Sell* case and its analysis of the third prong of the common law duty factors as outlined in *Webb*. Once again, we do not find that the *Sell* reasoning is helpful to our analysis of public policy concerns. The court in *Sell* stated that public policy concerns were paramount because there were thousands of poles similarly installed in this state and that the utility company had no reasonable alternative for their placement. However, Indiana Limestone did have other alternatives that they could have used to protect travelers along Rockport Road.

> There is neither practical need, nor social or economic justification, for unguarded holes. Thus, the owner ought, in any event, impose on himself requirements to avoid hazard to users of the public way, whether pedestrian or motor traffic.

*Hayes,* 310 N.Y.S.2d at 283, 258 N.E.2d at 696–697.

The undisputed facts demonstrate there are genuine issues of material fact regarding the existence of a relationship between the parties giving rise to a duty and whether the decedent's accident was reasonably foreseeable as a matter of law. Finally, public policy weighs in favor of imposing a duty upon owners of property containing hazards similar to the University Quarry when such hazards are located near places on public ways where users of the road might foreseeably deviate from it. Finding such issues of material fact, we conclude that the trial court properly denied summary judgment to Indiana Limestone with regard to Staggs's negligence claim.

### NUISANCE

Indiana Limestone also argues that it is entitled to judgment as a matter of law on Staggs's nuisance claim. Staggs contends University Quarry, owned by Indiana Limestone, is a public nuisance and relies on § 368 of the Restatement (Second) of Torts which states:

> Any condition on abutting land which involves an unreasonable risk of harm to travelers in a public highway is normally a public nuisance.

Restatement (Second) of Torts § 368 cmt. d (1965).

 A public nuisance is caused by an unreasonable interference with a common right. *Blair v. Anderson,* 570 N.E.2d 1337, 1339 (Ind.Ct.App.1991). Generally, a private party has no right of action under a public nuisance. *Id.* However, a party may bring a successful private action to abate or enjoin a public nuisance if the party demonstrates special and peculiar injury apart from the injury suffered by the general public. *Id.* at 1339–40. Furthermore, the injury must be a different kind and not merely a different degree. *Id.* at 1340.

 Staggs contends that University Quarry is a public nuisance because other quarries have had problems with law enforcement such as littering and illegal parking. However, he admits "[t]here is no evidence that this particular quarry was a problem for law enforcement." Appellee's Brief at 22. Despite this admission, Staggs asserts that University Quarry could be dangerous to hunters and hikers who enter Indiana Limestone's property.

Since Staggs does not offer any evidence that University Quarry caused an unreasonable interference with a common right, no material facts are in dispute. In essence, Staggs asks us to hold that University Quarry is a public nuisance by its very nature. Appellee's Brief at 22. However, Staggs fails to support its contention with any citations to authorities or statutes. Thus, pursuant to Ind. Appellate Rule 8.3(A)(7), Staggs has waived this issue because he has failed to provide a cogent argument with adequate citation of authority. *See Keller v. State,* 549 N.E.2d 372, 373 (Ind.1990). Therefore, we hold that Indiana Limestone is entitled to summary judgment as a matter of law with regard to Staggs's nuisance claim.

## CONCLUSION·

For the forgoing reasons, we affirm the trial court's denial of Indiana Limestone's motion for summary judgment with regard to the negligence issue and reverse with regard to the public nuisance issue.

Reversed in part and affirmed in part.

KIRSCH, J., concurs.

SHARPNACK, C.J., dissents with separate opinion.

### SHARPNACK, Chief Judge, dissenting.

I respectfully dissent with regard to the duty issue. I disagree with the majority's conclusion that under the facts of this case, Indiana Limestone owes the decedent a common law duty.

As stated in the majority opinion, we must examine three factors when determining whether there is a common law duty: the relationship between the parties, the reasonable foreseeability of harm, and public policy concerns. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied.* Contrary to the majority's conclusion, the undisputed facts of this case do not demonstrate that there was a relationship between the parties or that the accident was reasonably foreseeable. In addition, public policy weighs against imposing a duty. A careful review of each of these factors reveals that Indiana Limestone does not owe the decedent a common law duty.

### A. Relationship Between the Parties

The majority looks to *City of Indianapolis v. Emmelman*, 108 Ind. 530, 9 N.E. 155 (1886), *reh'g denied,* to support the assertion that "Our supreme court has long recognized a relationship between owners or occupiers of land adjacent to a highway and persons rightfully using the highway." *Opinion,* p. 1381. The majority elevates to the status of a "rule" dicta from *Emmelman,* which did not involve any excavation near the traveled portion of the highway. That case involved a steep pit that was dug in the bed of a stream where the stream was crossed by a city street. Construction was being done to prepare for building a bridge across the stream. The pit was filled with water from the stream and was surrounded by the otherwise shallow water in the stream. The area was frequented by children who were known to play in the stream in the area where the work was being done. The work was left unguarded when the workers finished for the day. The plaintiff's decedent was a five year old who drowned when he fell into the pit. The case has nothing to do with the liability of persons owning land adjacent to a highway to users of the highway, as is clear from the following passages from the decision:

> "The excavation into which the appellee's son fell was made *in Spruce street,* at a point where it crosses Pleasant run. It was made in the bed of a shallow stream, and left alone, unguarded in a July day, with knowledge that children were accustomed to play in the vicinity.... It was gross carelessness on the part of the city, with such knowledge, to leave an unguarded pit, filled with water, *in the street,* into which an unsuspecting child might fall.

> \* \* \* \* \* \*

> ... [T]he fact remains that the city made an excavation *in a street,* at a place where it knew children living in the vicinity were accustomed to play, and where they had a right to be, at all proper times, without being intruders upon the premises, or invaders of the rights of any one.... It owed them the duty to guard the pit *in the street,* so that they might not fall into it and perish."

*Emmelman,* 108 Ind. at 536–537, 9 N.E. at 158 (emphasis added).[1]

The majority also points to *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248 (Ind. 1996), in further support for the recognition of a relationship between the user of a high-

---

1. Over the years, *Emmelman* has been cited in cases involving attractive nuisances. *See, e.g., Pace v. American Radiator & Standard Sanitary Corp.,* 346 F.2d 321, 324 (1965) ("Other Indiana cases have reaffirmed the duty expressed in *Emmelman* to exercise special precautions where children are involved."); *Wozniczka v. McKean,* 144 Ind.App. 471, 488, 247 N.E.2d 215, 224 (1969). In addition, reviewing courts have relied upon *Emmelman* for the proposition that cities may be held liable for damages caused by negligence in the maintenance of streets and bridges. *See, e.g., Klepinger v. Board of Comm'rs,* 143 Ind.App. 155, 162, 239 N.E.2d 160, 165 (1968).

way and the owner or occupier of land adjacent to the highway. That case involved the liability of the operator of a pipe cutting station on a construction site to a pedestrian in a stairwell near the cutting station. The pipe cutter operator, Grunau, had no possessory or control interest with regard to the stairwell. The pedestrian was injured when he slipped on a pipe which had fallen on the stairwell. The supreme court concluded:

> "Grunau had a duty to insure that materials from the pipe cutting station did not endanger people in adjacent areas, including the stairwell, just as the defendant in *Fort Wayne Cooperage [Co. v. Page*, 170 Ind. 585, 84 N.E. 145 (1908), *reh'g denied* ] had a duty to prevent escaping steam from harming passers-by. Accordingly, as *Palsgraf [v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928) ] makes clear, Grunau had a duty of care to all reasonably foreseeable plaintiffs, including Tibbs."

*Id.* at 250. In *Fort Wayne Cooperage*, the operator of a manufacturing plant was found to be liable to the user of an adjacent highway where steam escaping from the plant startled the highway user's horse which then became unmanageable causing an injury. *Fort Wayne Cooperage Co. v. Page*, 170 Ind. 585, 588, 84 N.E. 145, 148.

What *Emmelman, Fort Wayne Cooperage*, and *Tibbs* tell us is that the person in control of land adjacent to a highway has a duty to exercise care not to injure those using the highway while they are on the highway. The cases do not address the relationship or duty as to users of the highway who leave the highway and come onto the property adjacent to the highway.

The Indiana case most helpful to resolve the issue presented is *Northern Indiana Public Service Co. v. Sell*, 597 N.E.2d 329 (Ind.Ct.App.1992), *trans denied.* In that case, a motorist lost control of his car, crossed the center line, went down an embankment, and crashed into a utility pole. *Id.* at 330–331. Thereafter, the plaintiff, a passenger in the car, filed an action against the utility company to recover damages for his injuries. *Id.* at 330. On appeal, we determined that the utility company did not owe the plaintiff either a statutory or common law duty in the placement of the utility pole. *Id.* at 334. Although the utility company did not own the land adjacent to the highway, it did have the authority under Ind.Code § 8–20–1–28 to use the area adjacent to the highway to place poles along the highway. *Id.* at 332.

The facts of the present case are analogous to the accident in *Sell*. The decedent here apparently also lost control of her car which then crossed the center line and opposing lane of traffic. The decedent's car continued off the highway and crashed into Indiana Limestone's quarry. Under the authority of *Sell*, there is no relationship between Indiana Limestone and the decedent which would give rise to a duty in this case.

Nevertheless, the majority finds that the "*Sell* reasoning is not helpful to our analysis." *Opinion*, p. 1382. The majority asserts that *Sell* is distinguishable because it did not address the common law relationship between the parties, but rather, just the statutory relationship. However, a plain reading of *Sell* reveals that it is subject to one interpretation, that there was no relationship between the utility company and the motorist. Specifically, we stated:

> "There is no contractual or professional relationship between the parties. However, as stated above, NIPSCO has the statutory right to locate its utility poles along state roads so long as the placement of the poles does not 'incommode' the public in the use of such roads. IC 8–20–1–28. Thus, there is somewhat of a statutory relationship between NIPSCO and Bernard Sell, a member of the public using U.S. Highway 24. Nonetheless, we believe that this relationship is limited to those members of the public using state highways as they were intended to be used. Once the car in which Bernard Sell was a passenger crossed the center line and opposing lane of traffic, the use was no longer legitimate. *See* IC 9–21–8–2 (vehicles required to be driven on the right half of the roadway). NIPSCO's position of the utility pole in this case was not related to the proper use of U.S. Highway 24. *The undisputed facts demonstrate that NIP-*

SCO had no relationship with the Sells that would give rise to a duty in this case."

*Sell*, 597 N.E.2d at 332 (emphasis added). Because we held that there was no relationship between the parties, I find the majority's distinction of *Sell* unpersuasive.

Lastly, the majority asserts that the "*Emmelman* rule" is in accord with the Restatement (Second) of Torts § 368 (1965), which has never been adopted in Indiana. *See State, Department of Natural Resources v. Morgan*, 432 N.E.2d 59, 66 n. 2 (Ind.Ct.App. 1982) (citing Restatement § 368, but not applying it). While Restatement § 368 may provide some guidance on the issue of common law duty, it is inapplicable to the present case because *Sell* is controlling.

As previously stated, *Sell* holds that once a motorist leaves the highway, there is no relationship between the motorist and those using adjacent land. *Sell*, 597 N.E.2d at 333–334. Therefore, under the authority of *Sell*, there is no relationship between Indiana Limestone and the decedent which would give rise to a duty in this dispute.

### B. Foreseeability

The majority concludes it was foreseeable that the decedent would lose control of her car and crash into the quarry. *Opinion*, p. 1383. In arriving at this conclusion, the majority distinguishes *Sell* and turns to authority from other states. *Id.* at 1382. The majority makes much of the fact that in *Sell* the driver crashed into a utility pole, but in the present case the decedent crashed into a quarry. Such a distinction does not render *Sell* inapplicable.

The majority fails to note the fact that the trial court relied upon *Sell* in determining the decedent's accident was foreseeable and, consequently, denied summary judgment. In its order, the trial court stated:

"2. Both Plaintiff and Defendant, Indiana Limestone Company, cite *NIPSCO v. Sell*, Ind.App. 597 N.E.2d 329, as authority for their position herein. In *Sells* [sic], the Court stated:

'The Louisiana Court of Appeals reached a similar result in an appeal from the grant of summary judgment. *Vigreaux vs. Louisiana Dep't of Transportation & Development* (1989) La. App., 535 So.2d 518. There, the Court concluded that a prior case affirming a judgment for a utility company under a similar circumstance did not stand for the proposition that a utility company, as a matter of law, will never be held liable for injuries caused a motorist whose vehicle leaves the primary roadway. Relying on facts identical to those articulated in the *McMillan [v. Michigan State Highway Commission* (1986), 426 Mich. 46, 393 N.W.2d 332]* case, the Court in *Vigreaux* observed that the utility pole was a mere eight inches from the street, and was located immediately following a 'sharp curve in the roadway.' 535 So.2d at 519. The court further noted that the plaintiff produced affidavits supporting the claim that the utility company had notice of prior accidents at that location, and that the utility was aware of an alternative, less dangerous location for its pole. Had the Sells been able to produce similar evidence in this case, summary judgment would have been inappropriate.'

It appears to this court that Plaintiff will be able to produce 'similar evidence' in this case.

3. Wherefore, Defendant's Motion for Summary Judgment is denied."

Record, pp. 192–193.

As indicated in its order, the trial court denied summary judgment on the basis that the plaintiff, Staggs, would later be able to produce evidence showing that the accident was foreseeable. However, such a ruling contravenes Ind. Trial Rule 56. This rule provides in part:

"At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. The judgment sought shall be rendered forthwith if the

designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.... Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but *the court shall make its determination from the evidentiary matter designated to the court.*"

T.R. 56(C) (emphasis added). In addition, the rule also provides: "No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H). Pursuant to T.R. 56, the trial court erred in basing its denial of summary judgment on the speculation that Staggs would later provide sufficient evidence, rather than on the designated evidence. *See Jackson v. Blanchard,* 601 N.E.2d 411, 415 (Ind.Ct.App.1992).

However, the mere fact that the trial court erroneously speculated on Staggs' ability to produce evidence does not require a reversal of the judgment. Because an appellate court reviews the trial court's decision on summary judgment according to the same standard as the trial court, the denial of summary judgment will be affirmed if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Beradi v. Hardware Wholesalers, Inc.,* 625 N.E.2d 1259, 1261 (Ind.Ct.App.1993), *reh'g denied, trans. denied.*

A review of the designated evidence reveals that there is no genuine issue of material fact concerning whether the accident was reasonably foreseeable. In its motion for summary judgment, Indiana Limestone designated the affidavit of Deputy James Inman of the Monroe County Sheriff's Department. In his affidavit, Inman stated:

"5. On February 23, 1993, Shelly D. Staggs operated a 1988 Lincoln Continental automobile in a southerly direction on S. Rockport Road south of its intersection with Tapp Road at approximately 9:12 a.m.

6. At a point approximately a half-mile south of that intersection, Rockport Road curves to the left.

7. To the left of that curve is a quarry known as the University Quarry which I believe was owned by Indiana Limestone Company, Inc.

8. The physical evidence at the accident scene revealed that the vehicle driven by Shelly D. Staggs crossed the center line of Rockport Road and ran up and over the left edge of the roadway. The Staggs vehicle crossed the center line at a point 30 feet south of PSI utility pole no. 22/11. After crossing the center line, the vehicle traveled 42 feet before leaving the left edge of the roadway.

9. After leaving the roadway, the vehicle operated by Shelly D. Staggs traveled a distance of 156 feet across brush and some other natural growth, then struck a wall at the corner of the quarry located approximately 24 feet from the nearest edge of S. Rockport Road.

\* \* \* \* \* \*

11. After the vehicle operated by Shelly D. Staggs struck the quarry wall, it fell into the water-filled quarry.

12. Prior to February 23, 1993, there had been no prior auto accidents on Rockport Road in which vehicles had left the southbound lane, crossed the center line, left the roadway, and entered the quarry.

13. On February 23, 1993, there were icy spots on the southbound and northbound lanes of S. Rockport Road between its intersection with Tapp Road and the location where the Staggs vehicle left the roadway."

Record, pp. 64–65.

In his response to the motion for summary judgment, Staggs designated the affidavit of Paul Box, an expert witness. In his affidavit, Box stated:

"It is common knowledge within my profession and has been for sometime that vehicles do leave the roadway in the ordinary course of travel for various reasons. Those reasons include but are not limited to skids on slippery pavement, tire blowouts, evasive maneuvers to avoid an accident with another vehicle, or to avoid an animal running across the road. For these

reasons, it is recognized that severe hazards within thirty feet or so of a road edge may be encountered by errant vehicles." Record, pp. 122–123.

Similar to the circumstances in *Sells*, I find that the evidence in the present case is not susceptible to the inference that the decedent's accident was reasonably foreseeable. *See Sell*, 597 N.E.2d at 334. The designated evidence indicates that there were no prior accidents at this site. In addition, because the decedent went off the road to the inside of the curve and traveled about two hundred feet before hitting the quarry, the fact that the quarry is less than twenty-five feet from a curve does not lead to an inference of foreseeability.

While I might agree with the trial court's speculation that Staggs conceivably could later produce evidence that the accident was foreseeable, I find that based upon the designated evidence, it was not reasonably foreseeable that motorists would leave the traveled portion of a road and crash into the quarry. Such foreseeability "does not mean that the precise hazard or exact consequence should have been foreseen, but neither does it encompass anything which might occur." *Crull v. Platt*, 471 N.E.2d 1211, 1215 (Ind.Ct. App.1984), *reh'g denied, trans. denied*. Therefore, the foreseeability factor weighs against imposing a duty on Indiana Limestone.

### C. Public Policy

The majority finds that public policy weighs in favor of imposing a duty, but does not give any explanation for such a finding. Instead, the majority merely asserts that Indiana Limestone had "other alternatives that they could have used to protect travelers," and cites to *Hayes v. Malkan*, 26 N.Y.2d 295, 310 N.Y.S.2d 281, 258 N.E.2d 695 (1970). *Opinion*, p. 1384. In *Hayes*, the court did not focus on public policy concerns about excavations near public roads, but rather held that there was no liability against a landowner for injuries to a motorist arising out of a collision with a pole. *Hayes*, 310 N.Y.S.2d at 283–285, 258 N.E.2d at 697.

Contrary to the majority's conclusion, the facts of this case show that public policy weighs against finding a duty. If we impose a duty on Indiana Limestone, then we are effectively imposing liability on a landowner every time a motorist leaves the roadway and falls into an excavation. Whenever a motorist loses control of his car and leaves the roadway, there is the risk of serious injury. Accordingly, there is no public policy goal which will be promoted by imposing liability on Indiana Limestone because its quarry is not a hazard to motorists who are properly using South Rockport Road.

In conclusion, the undisputed facts in this case do not demonstrate the existence of a relationship between the parties giving rise to a duty. Moreover, the accident in this case was not reasonably foreseeable as a matter of law. Finally, public policy weighs against imposing a duty in this case. Finding no issues of material fact in this case, I would hold that Indiana Limestone was entitled to summary judgment with regard to Staggs' negligence claim.

I respectfully dissent from the majority's holding on the duty issue and would reverse the trial court's judgment in all respects.